Filed
D.C. Superior Court
10/01/2022 21:03PM
Clerk of the Court

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | |
|---|---|
| **WINSTON MILLER,** | ) |
| 4710 Martin Luther King, Jr. Ave, S.W., | ) **Case No.:** |
| Apt. 102, | ) |
| Washington, D.C. 20032 | ) **Judge:** |
| | ) |
| **Plaintiff,** | ) |
| | ) **JURY TRIAL DEMANDED** |
| **v.** | ) |
| | ) |
| **HOWARD UNIVERSITY** | ) |
| 2244 6th Street, N.W., Suite 440 | ) |
| Washington, D.C. 22059 | ) |
| Served Upon: Registered Agent | ) |
| John G. Gloster, Jr. | ) |
| 2400 6th Street, N.W., Suite 321 | ) |
| Washington, D.C. 20059 | ) |
| | ) |
| **HOWARD UNIVERSITY BOARD OF** | ) |
| **TRUSTEES** | ) |
| 2244 6th Street, N.W., Suite 440 | ) |
| Washington, D.C. 22059 | ) |
| Served Upon: Registered Agent | ) |
| John G. Gloster, Jr. | ) |
| 2400 6th Street, N.W., Suite 321 | ) |
| Washington, D.C. 20059 | ) |
| | ) |
| **Defendants.** | |

## <u>PLAINTIFF'S VERIFIED COMPLAINT</u>

COMES NOW, Plaintiff, Winston Miller (hereinafter "Mr. Miller" and "Plaintiff"), by and through undersigned counsel, files this Complaint for relief against Defendants Howard University and its Board of Trustees for damages that Mr. Miller contends were caused by the acts and omissions of the university's faculty in their arbitrary and capricious determination to dismiss Mr. Miller from the university's Educational Administration and Policy Guided Leadership Experience (EAGLE) Doctor of Education Program. Also, the faculty's deviations from the university's

policies and procedure in the execution of Mr. Miller's wrongful dismissal from and bungled readmission to the EAGLE Program. In support of his Complaint, Mr. Miller alleges the following:

## PARTIES

1.      At all relevant times, Plaintiff, Mr. Miller, has been and is an individual residing in the District of Columbia.

2.      Plaintiff resides at 4710 Martin Luther King, Jr. Avenue, S.W., Apt. 102, Washington, District of Columbia 20032.

3.      Plaintiff is informed and believes and thereon alleges that at all relevant times, Defendant Howard University (hereinafter "Defendant Howard") was a co-educational, private institution organized under the laws of the District of Columbia, with a principal place of business at 2400 6th Street, N.W., Suite 440, Washington, D.C. 20059. Defendant Howard can be served through its registered agent as follows: John G. Gloster, Jr. 2400 6th Street, N.W., Suite 321, Washington, D.C. 20059.

4.      Plaintiff is informed and believes and thereon alleges that at all relevant times, Defendant Howard was operated and managed by the institution's Board of Trustees (Defendant Howard's Board of Trustees).

5.      The relevant faculty and administration members related to this matter at all relevant times were all employees of Defendants Howard and its Board of Trustees. Accordingly, Defendants Howard and its Board of Trustees are vicariously liable for the actions and omissions of the faculty and administration members related to this matter under the doctrine of *respondeat superior* because their acts and omissions related to Mr. Miller occurred within the scope of their employment at Defendant Howard.

Doc ID: f3e35a43d790bb23b969be44eb280288b63244d2

6.     The relevant faculty and administration members are as follows: Dr. Cristobal Rodriguez, Academic Advisor; Dr. Lisa Grillo, Assistant Professor and Doctoral Coordinator; Dr. Scott Dantley, Senior Associate Dean for Academic Affairs; and  Dr. Robert Palmer, Department Chair and Associate Professor.

## VENUE AND JURISDICTION

7.     This Court has jurisdiction over Plaintiff, Mr. Miller as a resident of the District of Columbia residing at 4710 Martin Luther King, Jr. Avenue, S.W., Apt. 102, Washington, District of Columbia 20032. Accordingly, this Court has personal jurisdiction over Plaintiff pursuant to D.C. Code Ann. §13-422.

8.     This Court has jurisdiction over Defendant Howard as a post-secondary education institution licensed by the District of Columbia and conducting business in the District of Columbia. Defendant Howard's Board of Trustees operated the university at all relevant times related to Plaintiff's claims. Accordingly, this Court has personal jurisdiction over Defendants Howard and its Board of Trustees pursuant to D.C. Code Ann. § 13-422.

9.     All relevant actions, omissions, events, and transactions related to Plaintiff's claims occurred in the District of Columbia.

10.     The venue is proper in the District of Columbia pursuant to D.C. Code § 11-921 because the events giving rise to the claims occurred in the District of Columbia.

## STATEMENT OF FACTS

11.     In 2013, Mr. Miller was accepted, as a part-time student, into the Educational Administration and Policy Guided Leadership Experience (EAGLE) Doctor of Education degree program at Howard University.

3

Doc ID: f3e35a43d790bb23b969be44eb280288b63244d2

12.     Mr. Miller avers that the documents he received in his admission package upon his enrollment stated that students were required to complete all coursework with a minimum of a 3.0 GPA. A student was only permitted two "C" grades, and after a student receives a third "C" grade in a Ph.D. program at Howard, he/she would be dismissed from the Graduate Program. However, "C" grades earned at the master's level at Howard University or elsewhere are not to be included in this count and cannot be counted toward degree requirements.  See Exhibit 1.

13.     Master's level courses do not appear to be specifically defined in any of Howard University's Handbooks. Accordingly, it is Mr. Miller's understanding, knowledge, and belief that 300-level courses correspond to advanced-level undergraduate classes and 500 and 600-level courses correspond to master's level courses.

14.     In the Spring of 2018, Mr. Miller enrolled in HUDE 306, an Independent Study, 1-credit course, and initially received an "F" but his grade was later changed to an "A." Additionally, this course was an elective course that did not count toward Mr. Miller's doctoral program coursework.

15.     Mr. Miller enrolled in the HUDE 306 course under the advice and supervision of his academic advisor, Dr. Cristobal Rodriguez as a method to meet the credit hour minimum requirement for full-time status in the EAGLE Program. Dr. Cristobal Rodriguez explained to Mr. Miller that this course was a filler class and could not be counted toward Mr. Miller's degree work.

16.     On November 28, 2018, Mr. Miller received an email from Administrative Assistant Ms. Menbere Endale with instructions on applying for the Comprehensive Exam that corresponded with the EAGLE Program in the Spring of 2019. Mr. Miller was advised to complete the application by December 14, 2018. See Exhibit 2.

Doc ID: f3e35a43d790bb23b969be44eb280288b63244d2

17.     On that same day, November 28, 2018, Mr. Miller received an email from Dr. Robert Palmer that contained his Comprehensive Exam results. Mr. Miller was advised that while he passed the research portion of his exam, he failed to score high enough on the administration portion of the exam. Dr. Palmer advised Mr. Miller to reach out to him about retaking the administration portion of the exam in the Spring of 2019. Dr. Robert Palmer noted that Mr. Miller had one more opportunity to take the exam. See Exhibit 3.

18.     Prior to November 28, 2018, Mr. Miller had not received any notification regarding his Comprehensive Exam results. After receiving his exam results from Dr. Palmer, Mr. Miller, while on campus at Howard University, visited Dr. Cristobal Rodriguez's office, where Dr. Rodriguez verbally advised Mr. Miller of his Comprehensive Exam results.

19.     Mr. Miller attended a follow-up session with Dr. Cristobal Rodriguez regarding retaking the exam, where Dr. Rodriguez openly announced in front of other advisees and persons in the advisory office that "this is Mr. Miller, who has failed the preliminary exam and needs to retake it." Mr. Miller was shocked and embarrassed by Dr. Rodriguez's open exclamation about his exam performance. He believed that Dr. Rodriguez's actions violated the Family Educational Rights and Privacy Act and the Student Privacy Rights section of the Howard University Student Handbook.[1]

20.     In 2019, Mr. Miller, again under Dr. Cristobal Rodriguez's advice and supervision, enrolled in courses that could not be counted toward the EAGLE Program's degree work in order to meet the program's full-time enrollment requirements. Again, Mr. Miller was assured by Dr.

---

[1] 2019-2020 Howard University Student Handbook, pg. 16, Policy Governing the Maintenance of Student Records.

Doc ID: f3e35a43d790bb23b969be44eb280288b63244d2

Rodriguez that the "filler classes" were a commonly used strategy and that the classes would not count against Mr. Miller.

21.     According to Mr. Miller's information, knowledge, and belief, the strategy to take "filler classes" along with classes necessary to complete his degree work is a very common practice at educational institutions nationally and specifically at Howard University.

22.     Mr. Miller completed ELPS 506 Independent Study with a grade of a "B" in the Fall 2017 semester with a weight of three (3) credit hours as required by the EAGLE Program curriculum; however, Mr. Miller, under Dr. Cristobal Rodriguez's direct advice, guidance, and oversight, enrolled in ELPS 506 Independent Study three (3) additional times during his matriculation through the EAGLE Program, with each additional course now weighted as one (1) credit hour. The EAGLE Program curriculum did not require these additional independent courses according to the program's curriculum website.[2]

23.     While under the belief that he could enroll in "filler" classes without consequence, Mr. Miller enrolled in *Summer 2019* ELPS 506 Independent Study, in which he received a "D" and *Summer 2019* ELPS 611 Board and Community Relations, in which he received a "C."

24.     ELPS 506 Independent Study was previously completed by Mr. Miller during the Spring 2019 semester, and he received a grade of an "A." Additionally, the EAGLE Program does not offer summer classes in its curriculum.[3] It is also Mr. Miller's belief that ELPS 506 Independent Study was a master's level course.

25.     Thus, in reliance on Dr. Cristobal Rodriguez's guidance, advice, and oversight, it was and is still Mr. Miller's belief that the *Summer 2019* ELPS Independent Study did not and

---

[2] https://education.howard.edu/academics/department-educational-leadership-and-policy-studies/edd-program-education-leadership-and
[3] Id.

6

Doc ID: f3e35a43d790bb23b969be44eb280288b63244d2

could not count toward his degree work and that the grade that he received in that class had no consequence.

26.     *Summer 2019* ELPS 611 Board and Community Relations is not listed as a required course in the EAGLE program.[4]  Additionally, the EAGLE Program does not offer summer classes in its curriculum.

27.     Thus, in reliance on Dr. Cristobal Rodriguez's guidance, advice, and oversight, it was and is still Mr. Miller's belief that *Summer 2019* ELPS Board and Community Relations did not and could not count toward his degree work and that the grade that he received in that class had no consequence.

28.      Accordingly, Mr. Miller's dismissal from the doctoral program in January of 2020 was wrongful and inappropriate because it was based upon grades received in free elective master's level courses or below that did not and could not be counted toward his degree work in the EAGLE Program.

29.     In 2019, Mr. Miller was not permitted to take his Comprehensive Exam because he was advised that he did not meet the application requirements; however, he was allowed to remain enrolled in ELPS 599, Dissertation Seminar with Dr. Fenwick, which was an error because the Dissertation Seminar course could only be taken in conjunction with the comprehensive exam or after the exam was passed. Mr. Miller was not advised of this technicality in course scheduling until he received an email from his academic advisor, Dr. Rodriguez, on January 10, 2020, outlining perceived problematic courses and grades. See Exhibit 4. Contrarily, Mr. Miller believes that he should have been permitted to take his comprehensive exam, and if he could not, he should have been advised that he was ineligible to register for his Dissertation Seminar.

---

[4] Id.

7

Doc ID: f3e35a43d790bb23b969be44eb280288b63244d2

30.     Accordingly, after discovering the enrollment error, Mr. Miller was prohibited from completing the Dissertation Seminar and received a grade of a "D" in that class.

31.     Mr. Miller avers that his Dissertation Seminar grade with Dr. Fenwick was in the process of being changed; however, Mr. Miller was dismissed from the EAGLE Program before the process was completed. See Exhibit 5.

32.     On December 17, 2019, Mr. Miller submitted his "Self-Report of Coursework" on the Taskstream platform for the EAGLE Program under the advice and supervision of Dr. Rodriguez and with his knowledge.

33.      On January 7, 2020, Mr. Miller received an email from Dr. Lisa Grillo stating that his application for his qualifying exam was incomplete and that he was missing the Self-Report of Coursework" portion of the exam. See Exhibit 6.

34.     On January 8, 2020, as instructed by Dr. Lisa Grillo, Mr. Miller resubmitted his "Self-Report of Coursework" via pdf on the Taskstream platform. Additionally, Mr. Miller submitted the Graduate Expository Writing Certificate and his transcript for Section 1 of the exam. See Exhibit 7.

35.     Later that day, on January 8, 2020, Dr. Lisa Grillo emailed Mr. Miller informing him that she could not approve his application to take the Comprehensive Exam due to the incomplete grade in a 2016 Workshop on Leadership Development course, although Mr. Miller received a final grade of an "A" in that course. See Exhibit 8.

36.     Mr. Miller responded to Dr. Lisa Grillo's email informing her that Dr. Rodriguez had received Mr. Miller's updated final grade in the Workshop on Leadership Development course from the instructor of the course Dr. Hairston. See Exhibit 8.

Doc ID: f3e35a43d790bb23b969be44eb280288b63244d2

37.     On January 10, 2020, Mr. Miller received an email from Dr. Robert Palmer informing him that he was dismissed from his academic program due to receiving *more than two grades below a "B minus"* in his academic coursework. The email listed the following courses and grades: (1) Independent Study - Spring 2018, HUDE 306, Grade "F"; (2) Independent Study – Summer 2109, ELPS 506, Grade "D"; (3) Board and Community Relations – Summer 2019, ELPS 611, Grade "C"; (4) Dissertation Seminar – Fall 2019, Grade "D." See Exhibit 9.

38.     Dr. Palmer's January 10, 2020, dismissal email shocked Mr. Miller and appeared to be made arbitrarily and capriciously because prior to the beginning of each previous semester, Mr. Miller was advised by academic advisor Dr. Cristobal Rodriguez that he was making satisfactory academic progress.

39.     Furthermore, Mr. Miller also found the dismissal email to be irrational because the courses listed in Dr. Robert Palmer's January 10 email aside from the Dissertation Seminar, were electives that Mr. Miller enrolled in at the advice and under the guidance of Dr. Cristobal Rodriguez and was advised that credits from those classes would not and could not be counted toward his degree work in the doctoral program.

40.     Specifically, (1) Independent Study - Spring 2018, HUDE 306, is an undergraduate level course that could not be counted toward Mr. Miller's doctoral degree work; (2) Independent Study – Summer 2109, ELPS 506, Mr. Miller's degree work required three (3) credits of an Independent Study course, which Mr. Miller completed in the Fall of 2017 with a grade of a "B"; thus the Summer 2019 Independent Study was taken as a free elective and could not be counted toward his doctoral coursework, and the course was a master's level course; and (3) Board and Community Relations – Summer 2019, ELPS 611, this course was also a free elective and was not

9

Doc ID: f3e35a43d790bb23b969be44eb280288b63244d2

a required course in Mr. Miller's doctoral program and could not be counted toward his degree work and the course was a master's level course. See Exhibit 10.

41.     Mr. Miller's June 6, 2019, academic transcript indicated that he had earned 97 Earned Credit Hours out of a total of 99 Credit Hours at that time. Mr. Miller's Educational Leadership and Policy Studies required a minimum of 66 credit hours. See Exhibit 10.

42.     Mr. Miller was required to complete a Dissertation Seminar. Prior to enrolling in the Dissertation Seminar, Mr. Miller was not advised by Dr. Cristobal Rodriguez that he could only enroll in the Dissertation Seminar in conjunction with the Comprehensive Exam or after he passed the Comprehensive Exam. Mr. Miller was dismissed from the EAGLE Program before completing a grade change in the Dissertation Seminar course.

43.     The Howard University 2019 Faculty Handbook states that some of the responsibilities of a faculty advisor include monitoring academic progress, clarification of academic and institutional policies, and assisting with other academic issues.[5] Additionally, "In performing this advising function, faculty members should make every reasonable effort to ensure that the information they transmit is thorough and accurate."[6]

44.     Moreover, Mr. Miller described the January 10, 2020, dismissal email to be outrageous and the decision it communicated to be arbitrary and capricious because Mr. Miller was advised to enroll in the Dissertation Seminar, despite Dr. Cristobal Rodriguez's knowledge that Mr. Miller was not simultaneously taking the Comprehensive Exam and that he had not previously passed the Comprehensive Exam in its entirety.

---

[5] 2019 Howard University Faculty Handbook, pg. 24, Section B2.1.1 Student Advising
[6] Id.

10

Doc ID: f3e35a43d790bb23b969be44eb280288b63244d2

45.     Furthermore, the January 10, 2020, dismissal decision appears to be arbitrary and capricious because the Academic Standards listed on the EAGLE Program's website indicate; "A student who accumulates nine (9) or more semester hours of grades below a B shall also be suspended from the graduate program."[7] Additionally, "a student incurs academic probation when the cumulative grade point average falls below 3.0."[8] The dismissal decision deviates from the EAGLE Programs Academic Standards because the grades in question should not count against Mr. Miller. However, even if Mr. Miller's grades in the above-listed classes were counted against him, Mr. Miller should have been advised and counseled about the grades and placed on academic probation and/or academic suspension before his dismissal from the EAGLE Program.

46.     On January 11, 2020, Mr. Miller and Dr. Palmer communicated by email, at which time Dr. Palmer advised Mr. Miller to contact Ms. Brandy Jackson, the Assistant Dean of Enrollment & Student Affairs, to help facilitate Mr. Miller's "withdrawal" from the Howard University School of Education.

47.     Ms. Jackson emailed Mr. Miller later that day on January 11, 2020, and advised Mr. Miller to complete an online withdrawal and provided Mr. Miller with a link to a web address. See Exhibit 11.

48.     On January 13, 2020, Mr. Miller received an email from Dr. Robert Palmer, who informed Mr. Miller that his letter of dismissal had been revised per Dr. Cristobal Rodriguez's review of Mr. Miller's transcript. Apparently, Dr. Rodriguez presented more grades to support Mr. Miller's dismissal; however, these additional grades were misrepresented to Dr. Robert Palmer

---

[7] https://education.howard.edu/academics/department-educational-leadership-and-policy-studies/edd-program-education-leadership-and
[8] Id.

Doc ID: f3e35a43d790bb23b969be44eb280288b63244d2

because Dr. Rodriguez failed to advise Dr. Palmer that Mr. Miller's final grades in those courses were satisfactory. See Exhibit 12.

49.     On January 13, 2020, Mr. Miller sent a follow-up email to Dr. Robert Palmer requesting clarification regarding the program's dismissal policies and procedures and challenged his dismissal. See Exhibit 13.

50.     Dr. Cristobal Rodriguez responded to Mr. Miller's email, stating that he believed Dr. Lisa Grillo was using Blackboard in 2018- 2019 to communicate with and send notifications to students. She had access to all necessary information related to Mr. Miller's dismissal. See Exhibit 14.

51.     Mr. Miller responded to Dr. Rodriguez's email by stating he only used Blackboard when expressly advised doing so by professors advising that Blackboard would be the recommended communication tool for the course. Furthermore, Mr. Miller inquired when Dr. Lisa Grillo told students of her intent to use Blackboard as the predominant communication tool in the course and if that notice was provided by email.  See Exhibit 15.

52.     Dr. Grillo responded with a timeline that stated the following: "8/2018: All students in the Ed.D. program were sent a copy of the handbook via email. 11/2018: The Ed.D. handbook was posted to the Ed.D. Program Community Blackboard site. 9/2019: You informed me that you did not have access to the program's Blackboard site and were unaware that the site existed." See Exhibit 16.

53.     Mr. Miller responded to Dr. Grillo, stating that in August 2018, he never received a copy of the handbook or Blackboard notification via email or blackboard. Plaintiff Mr. Miller had no email notification in his student email account concerning the transition to Blackboard as a means of communication with Dr. Grillo. See Exhibit 17.

Doc ID: f3e35a43d790bb23b969be44eb280288b63244d2

54.     On the same day, January 13, 2020, Mr. Miller emailed Dr. Palmer with concerns regarding the dismissal procedures in the Student Handbook that was emailed to him earlier in the day. Mr. Miller recited paragraph one of the grievance procedures, which stated, "Upon receiving notice of concern, complaint, or charge concerning a student, the program coordinator will meet with the student and may advise them to seek informal methods of resolution with the member(s) raising the concern, complaint, or charge."

55.     Mr. Miller informed Dr. Palmer that he disagreed with his dismissal and adamantly challenged the dismissal as wrongful and unsubstantiated by his academic records. Furthermore, Mr. Miller contended that his dismissal was misaligned with the dismissal procedures of the School of Education and those of Howard University at large. However, as provided for in the Student Handbook, Mr. Miller was not provided with a meeting with the Program Coordinator, Dr. Lisa Grillo. See Exhibit 18.

56.     Dr. Grillo replied to Mr. Miller's email to Dr. Robert Palmer and advised Mr. Miller that he had a right to appeal the decision of dismissal from the doctoral program and referenced the Student Handbook for the procedure. In the email, Dr. Lisa Grillo also informed Mr. Miller that she was happy to assist him in developing a plan of action to complete his earned degree. Additionally, Mr. Miller was informed by Dr. Lisa Grillo that he was required to "sit out" for one semester, and he would be able to reapply for the Ed. D program in the Fall of 2020. However, Dr. Lisa Grillo never arranged a time to meet with Mr. Miller to address his concerns, nor did she clarify whether he was dismissed or suspended. See Exhibit 19.

57.     Mr. Miller contends that Dr. Grillo has not met with him to devise a plan of action to complete his degree work within the School of Education. However, Dr. Lisa Grillo contends that because Mr. Miller purportedly violated the School of Education's academic policy,

Doc ID: f3e35a43d790bb23b969be44eb280288b63244d2

accordingly, he was not entitled to dispute dismissal through the informal process provided in the Student Handbook. See Exhibit 18

58.     Dr. Lisa Grillo disregarded Mr. Miller's attempts to resolve the matter through the informal and formal grievance processes and only advised him to appeal his dismissal.

59.     Dr. Lisa Grillo's determination that the informal and formal grievance process did not apply to Mr. Miller's challenge to his dismissal was an arbitrary and capricious determination because it was made in contradiction to Article VIII of the Howard University Graduate School's Rule and Regulations website, which covers Appeals of Academic Decisions and states: "Grievance procedures § , as detailed under the "Policy on Student Academic Procedures" in The Student Reference Manual, the H-Book and other University publications, are applicable in the case of challenges to academic decisions."[9]

60.     Article VIII, Appeals of Academic Decisions, goes on to outline in Section 1 the informal grievance process, and Section 2 outlines the formal grievance process. Although Mr. Miller attempted to utilize the informal and formal process, he contends that the faculty and administration of the Howard University School of Education improperly denied his request and arbitrarily and capriciously prohibited his rightful participation in the grievance processes.

61.     Mr. Miller contends that Dr. Grillo did not verify whether the courses offered to support Mr. Miller's dismissal were courses that could be counted toward his degree work.

62.     On August 5, 2020, Mr. Miller received an email from Dr. Lisa Grillo with the revised 2020-2021 Student Handbook for the School of Education. See Exhibit 20.

---

[9] See https://gs.howard.edu/academics/rules-and-regulations/article-viii-appeal-academic-decisions

Doc ID: f3e35a43d790bb23b969be44eb280288b63244d2

63.     On September 7, 2020, Mr. Miller emailed Dr. Dantley, Associate Dean for Academic Affairs, his formal appeal letter. Dr. Dantley responded that he was in receipt of Mr. Miller's email and would investigate his formal grievance and share with him the result of his appeal. See Exhibit 21.

64.     Dr. Dantley did not respond nor follow up with Mr. Miller regarding his appeal letter.

65.     On September 8, 2020, at 7:59 a.m. Mr. Miller received an email from Dr. Robert Palmer advising Mr. Miller, stating, "I can't open this letter," which was in response to Mr. Miller's appeal letter. See Exhibit 22.

66.     In the September 8, 2020, email Dr. Robert Palmer also stated, "In terms of your appeal, you were required to sit out one semester." "After sitting out that one semester, you are eligible to come in Fall 2020." "Today is the last day for late registration" "You should be able to work with your academic advisor to get registered for this semester." See Exhibit 22.

67.     Mr. Miller interpreted September 8, 2020, email to mean that Dr. Robert Palmer did not read Mr. Miller's appeal letter; the School of Education's decision against Mr. Miller was characterized as a suspension and not a dismissal; and that he was readmitted into the EAGLE Program within the Howard University School of Education.

68.     In reliance on Dr. Robert Palmer's September 8, 2020, email, Mr. Miller worked frantically to complete the readmission process. He only had mere hours to complete the requirements after receiving the email. However, Mr. Miller was concerned that his readmission process deviated from the readmission process described in Section 7. Readmission to the Graduate School of the Howard University Graduate School's website.[10]

---

[10] https://gs.howard.edu/academics/rules-and-regulations

Doc ID: f3e35a43d790bb23b969be44eb280288b63244d2

69.     After Mr. Miller received the initial email indicating his reinstatement on September 8, 2020, Mr. Miller texted his advisor, Dr. Cristobal Rodriguez, to initiate the process of registering for classes in the Fall 2020 semester. See Exhibit 23.

70.     On September 8, 2020, at 12:08 p.m., Dr. Cristobal Rodriguez sent Mr. Miller a text message that advised Mr. Miller to contact Ms. Endale to *resubmit* his application to be reinstated. See Exhibit 23.

71.     On September 8, 2020, at 12:13 p.m. Mr. Miller sent a text message to Dr. Rodriguez requesting confirmation that he could register for an Independent Study (4.0) and inquired about the outcomes of the Dissertation Course and the Comprehensive Exam/Dissertation Proposal. Mr. Miller also requested that Dr. Rodriguez provide him with a pin for BisonWeb registration. See Exhibit 24.

72.     On September 8, 2020, at 12:16 p.m., Dr. Rodriguez sent Mr. Miller a text message that included the pin number required to register for the Fall 2020 Dissertation course and Comprehensive Exam. Dr. Rodriquez's message also advised Mr. Miller to "make sure you attend prep session for comp exam and follow up with Dr. Grillo; she is your guide on this." See Exhibit 24.

73.     On September 8, 2020, at 12:10 p.m., Dr. Robert Palmer emailed Mr. Miller, in which his prior dismissal determination was characterized as an "academic suspension." See Exhibit 25..

74.     In the same email from Dr. Robert Palmer to Mr. Miller on September 8, 2020, Dr. Palmer advised Mr. Miller to complete a Former Returning Student Application. See Exhibit 25.

75.     On September 8, 2020, at 6:29 p.m., Mr. Miller received another email from Dr. Robert Palmer; however, this email essentially rescinded Mr. Miller's prior readmittance. Dr.

16

Doc ID: f3e35a43d790bb23b969be44eb280288b63244d2

Robert Palmer stated, "When I responded to your earlier email, I was under the impression that you had sat out for the spring semester and completed the Former Returning Student Application per the letter sent on January 12th, 2020." See Exhibit 26.

76.     Mr. Miller never received a letter from Howard University on or about January 12, 2020, and has no knowledge or information regarding such a letter.

77.     Furthermore, Dr. Robert Palmer in the above-mentioned email goes on to say, "However, after consulting with your advisor, Dr. Rodriguez, and Associate Dean for Academic Affairs, Dr. Dantley, you are still *dismissed* from the Education Doctorate (Ed.D.) program in the Department of Educational Leadership and Policy Studies as you have not submitted a Former Returning Student Application and you remained enrolled in a course this past Spring of 2020."

78.     Mr. Miller was confused by Dr. Robert Palmer's language and was still unsure whether he was dismissed or suspended from the EAGLE Program. See Exhibit 26.

79.     The September 8, 2020, at 6:29 p.m. email from Dr. Robert Palmer went on to say, "As noted per the letter sent out on January 12th, 2020, you can reapply to the program." "Please note, however, that your application must be approved by the faculty." "In addition to submitting your reapplication, you must also include a statement with considerations to the faculty regarding your academic history and how to eventually move forward successfully in the Ed.D. program." See Exhibit 26. Mr. Miller noted that the email appeared to lay out additional steps to the reapplication process, of which Mr. Miller was unaware.

80.     Mr. Miller contends that the ambiguous language pertaining to his enrollment and the fluidity with which the terms "dismissal" and "suspension" were used by faculty and administration created confusion about his enrollment status and procedure to continue or re-engage with the EAGLE Program.

Doc ID: f3e35a43d790bb23b969be44eb280288b63244d2

81.     The ambiguous language used by the faculty and administration and their disregard for policy and protocol support Mr. Miller's contention that the faculty's decision to dismiss him from the program was an unclear, arbitrary, capricious, and irrational decision inconsistent with academic policies and procedures.

82.     Mr. Miller further contends that for the reasons set forth above, the faculty and administration of Howard University's School of Education negligently monitored, counseled, and reported Mr. Miller's academic status and progression, as well as failed to provide Mr. Miller with financial aid exit counseling.

83.     Mr. Miller contends that for the reasons set forth above, he was wrongfully dismissed from Howard University's School of Education based upon its faculty's arbitrary and capricious decision that contradicted the universities' academic policies and was unsupported by the facts in this matter.

84.     Mr. Miller has paid Howard University directly or through financial aid at least $348,431.50 in tuition to pursue his doctoral degree in Educational Leadership and Policy Studies. In addition, Mr. Miller incurred expenses for books, transportation, housing, and food, from August 2013 through January 2020, when he was dismissed from the doctoral program. Mr. Miller registered and enrolled in courses for which he now owes outstanding fees even though he was prohibited from participating in the courses.

85.     20 U.S. Code § 1092(a)(1)(K) and (b)(1)(A) require Howard University to provide enrolled students with the standards which the student must maintain in order to be considered to be making satisfactory progress, pursuant to section 1091(a)(2) of Title 20 and to provide counseling to student loan borrowers before completion of the course study for which the borrower enrolled at the institution or at the time of departure from the institution.

Doc ID: f3e35a43d790bb23b969be44eb280288b63244d2

86.     Mr. Miller did not receive financial aid exit counseling upon his dismissal from the Howard University School of Education and its Educational Leadership and Policy Studies program.

87.     DCMR 5-A8004 et seq. requires institutions of higher education, amongst other things, to demonstrate honesty and fair dealing with its students; to adequately manage the mission and goals of the institution with clearly delineated, written administrative policies and procedures; the standards for evaluating student performance shall be fair and adequate.

88.     Mr. Miller contends that Howard University's School of Education failed to demonstrate honesty and fair dealing in the handling of his wrongful dismissal, it failed to delineate its administrative policies and procedures clearly, and it failed to evaluate Mr. Miller's student performance by standards that were fair and adequate.

## CAUSES OF ACTION

## COUNT I

### NEGLIGENCE - WRONGFUL DISMISSAL
### Against Howard University and Howard University Board of Trustees

89.     Plaintiff incorporates herein each and every allegation contained in paragraphs 1 through 88 as if such allegations were set forth herein in their entirety.

90.     Under longstanding District of Columbia case law, the District recognizes a legally actionable claim of negligence when: 1) a duty of care is owed by the defendant to the plaintiff; 2) there is a breach of that duty by the defendant, and 3) there has been damage to the interests of the plaintiff, which was proximately caused by the breach.

91.     Defendants Howard and its Board of Trustees and its faculty and administration had a duty of care to adhere to the procedures and policies presented in the university's

19

Doc ID: f3e35a43d790bb23b969be44eb280288b63244d2

handbook, as well as those presented in its Graduate School's rules and regulations and its

School of Education's handbook and to refrain from arbitrary and capricious decision-making.

92.     Mr. Miller contends that Defendants Howard and its Board of Trustees and its

faculty and administration breached their duty of care regarding their decision to dismiss Mr.

Miller from the EAGLE Program in a manner that deviated from the relevant procedures and

policies of the university at large, Graduate School, and School of Education.

93.     The School of Education provides for an informal grievance process that includes

the following:

> 1. A student who believes that they have been aggrieved has an opportunity to attempt to seek an informal resolution with the other party involved in the dispute, e.g., a grade dispute with the instructor.

> 2. If the student is unable to resolve the dispute with the primary party of the dispute, then the student shall be granted an opportunity to seek the intervention of their department chairperson.

> 3. If the student is unable to resolve the dispute at the departmental level, then the dispute shall be brought to the Dean's Office, whereupon the Dean or their designee will seek to reach an informal resolution through mediation between the parties.

> 4. If the mediation at the Dean's level fails, then the student's grievance shall be consigned to the committee designated by the school/college to address student grievances herein referred to as the Student Grievance Committee.

94.     Pursuant to Articles A1.4, A1.5.2, A1.5.3, and A1.5.4, of the 2020-2021 Howard

University Faculty Student Handbook:

> 1. The ultimate authority and responsibility for both the development of policies and the control and operation of Howard University are vested in a self-perpetuating Board of Trustees as provided in the University's charter.

Doc ID: f3e35a43d790bb23b969be44eb280288b63244d2

2. The Provost and Chief Academic Officer are responsible for the overall supervision of the programs and activities of the schools and colleges, other academic units, and the academic support units of the University.

3. Each of the University's deans is responsible for the administration of the school/college; they report to the dean of their school. Deans have responsibilities that may include but are not limited to the following: … academic program development and review; and student advising.

4. Each department chair is responsible for administering the academic unit to which they are assigned. The department chair's responsibilities may include but are not limited to the following: program development, review, evaluation, and assessment; and student advising.

95.     Pursuant to Article I,  Section 6, <u>Academic and Research Advisement</u> of the 2020 Howard University Graduate Student Handbook (<u>See</u> Exhibit 27), Defendant Howard has a special duty of care to "provide graduate faculty advisement for students in the Graduate School, to assign each incoming graduate student an academic advisor who will assist in academic planning throughout matriculation and development of a Program of Study, and to provide a copy of the departmental handbook and/or rules and regulations as applicable."

96.     Pursuant to the District of Columbia Higher Education Law, DCMR 5-A8004.2 provides that a postsecondary degree-granting educational institution shall show that it has and will or will conduct conformance with generally accepted accounting principles and business practices and demonstrate honesty and fair dealing with its employees, its students, the government, and the public.

Doc ID: f3e35a43d790bb23b969be44eb280288b63244d2

97.     Pursuant to District of Columbia Higher Education Law, DCMR 5-A8004.9 provides that a postsecondary degree-granting educational institution shall meet the following requirements related to its curricula and programs:

(1) The postsecondary degree-granting educational institution shall maintain Written policies and procedures for evaluating student performance, a written procedure for the systematic review, evaluation, and modification of curricula and programs of study.

(2) The standards for evaluating student performance shall be fair and adequate.

98.     Pursuant to District of Columbia Higher Education Law, DCMR 5-A8004.13 provides that a postsecondary degree-granting education institution shall offer adequate, sufficient services for students in addition to educational instruction in the classroom and laboratory, including, at a minimum: An adequate program of academic, occupational, and personal counseling and guidance.

99.     As agents/employees of Defendants Howard and its Board of Trustees, Dr. Rodriguez, Dr. Lisa Grillo, Dr. Dantley and Dr. Robert Palmer were bound by a duty of care to comply with all the rules, regulations, policies, and procedures of Defendant Howard and its Graduate Schools and School of Education.

100.    As Trustees of the University, Defendant Howard's  Board of Trustees have a duty of care to operate the university with reasonableness and prudence.

101.    Defendants Howard, the Trustee Board, and Dr. Rodriguez, Dr. Grillo, and Dr. Palmer breached their duty of care through their negligent act of wrongfully dismissing Mr. Miller from the Educational Administration and Policy Guided Leadership Experience (EAGLE), Doctor of Education degree program at Howard University.

Doc ID: f3e35a43d790bb23b969be44eb280288b63244d2

102.    Defendants breached their duty of care by failing to reasonably and prudently supervise the School of Education's policy compliance and decision-making.

103.     Defendant Howard and its Board of Trustees Board had a duty of care to ensure that the School of Education had unambiguous procedures and policies in place regarding academic dismissal and the master's level classes exception; to deter academic advisors from unclear instructions and advice regarding the use "filler classes" as a strategy to meet enrollment credit hour requirements; to ensure the administration of academic dismissal exit counseling, and to verify policy compliance.

104.    Dr. Rodriguez, Dr. Grillo, Dr. Dantley, and Dr. Palmer owed Mr. Miller a duty of care to refrain from arbitrary and capricious decision-making; however, they breached their  duty of care by dismissing Mr. Miller from the EAGLE Program in a manner that was inconsistent with the policies of Defendant Howard, its Graduate Schools, and School of Education and making an ambiguous and arbitrary and capricious decision without considering the facts of Mr. Miller's circumstances.

105.    Dr. Rodriguez, Dr. Grillo, Dr. Dantley, and Dr. Palmer's also owed Mr. Miller a duty of care to accurately report and monitor his matriculation through his course curriculum. However, they breached their duty by inaccurately and improperly advising Mr. Miller, misrepresenting whether classes would be counted toward his degree work, and refusing to participate in the informal or formal grievance process with Mr. Miller

106.    Dr. Rodriguez, Dr. Grillo, Dr. Dantley, and Dr. Palmer owed Mr. Miller a duty of care to provide clear and unambiguous policies and procedures to Mr. Miller. However, they breached their duty by using ambiguous language to dismiss Mr. Miller and by refusing to meet

Doc ID: f3e35a43d790bb23b969be44eb280288b63244d2

with him to provide clarity as to how the dismissal decision was reached in accordance with the policies and procedures of the university at large and the School of Education.

107.    Dr. Cristobal Rodriguez had a duty of care to properly advise Mr. Miller academically in a reasonably prudent manner in his role as Mr. Miller's academic advisor to include monitoring academic progress, clarification of academic and institutional policies, and assisting with other academic issues.  However, Dr. Rodriguez advised Mr. Miller to take "filler courses" in order to fulfill enrollment credit hour requirements and that those classes would not be counted toward Mr. Miller's degree work, nor would it count negatively against Mr. Miller. Dr. Rodriguez then presented the same classes that he advised Mr. Miller to take with impunity as the basis for his dismissal from the EAGLE Program.

108.    Dr. Rodriguez failed to clarify academic and institutional policies evidenced by his advice to improperly enroll Mr. Miller in Dissertation Seminar and the confusion over the application, role, and use of the "filler classes" in which he advised Mr. Miller to enroll.

109.    Furthermore, Dr. Rodriguez failed to provide Mr. Miller with financial aid exit counseling or any type of exit counseling.

110.    Dr. Grillo, Dr. Dantley, and Dr. Palmer had a duty of care to properly manage and oversee the administration of Howard University's School of Education policies and procedures. However, Dr. Grillo, Dr. Dantley, and Dr. Palmer deviated from the School of Education policies and procedures and made arbitrary and capricious decisions regarding Mr. Miller's dismissal. Dr. Grillo and Dr. Dantley did not participate or acknowledge the validity of Mr. Miller's request to utilize the informal and formal grievance process. Dr. Grillo went as far as advising Mr. Miller that the informal and formal grievance processes did not apply to Mr. Miller's academic dismissal.

Doc ID: f3e35a43d790bb23b969be44eb280288b63244d2

111.    Dr. Palmer admitted that he did not open Mr. Miller's appeal letter, accordingly he could not have considered it when making his decision to dismiss Mr. Miller from the EAGLE Program. Additionally, Dr. Palmer did not participate in the informal grievance process as requested by Mr. Miller. Dr. Palmer also improperly advised Mr. Miller regarding the readmission process by not properly advising him on the proper time frame to submit a readmission application. Lastly, Dr. Palmer used ambiguous language that made it difficult to determine whether Mr. Miller was dismissed or suspended from the program.

112.    Mr. Miller contends that Defendants Howard and its Board of Trustees and its faculty and administration's negligent acts and omissions, were the proximate cause of harm to Mr. Miller including actual emotional distress, loss of employment and career opportunities, a lowered reputation and status in the educational community, and the purpose of his student loan indebtedness was frustrated as a direct and proximate result of his wrongful and arbitrary and capricious dismissal from the EAGLE Program at Howard University.

113.    Mr. Miller contends that but for Defendant Howard and its Board of Trustees and its faculty and administration's negligent acts and omissions he would not have been dismissed from the EAGLE Program.

114.    Mr. Miller contends that the harm he has suffered was a foreseeable consequence of his wrongful dismissal from the EAGLE Program.

115.    Mr. Miller contends that Defendants Howard and its Board of Trustees are vicariously liable for the tortious acts and omissions of its employees Dr. Cristobal Rodriguez, Academic Advisor; Dr. Lisa Grillo, Assistant Professor and Doctoral Coordinator; Dr. Dantley, Senior Associate Dean for Academic Affairs; and  Dr. Robert Palmer, Department Chair and Associate Professor because (1) a master and servant relationship existed between employer and

25

employees when they wrongfully dismissed Mr. Miller; (2) that the employees were in the process of their employer's business at the time of they wrongfully dismissed Mr. Miller; and (3) the employees were in the scope of their employment at the time of Mr. Miller's wrongful dismissal.

116.    Mr. Miller contends that Dr. Cristobal Rodriguez, Academic Advisor; Dr. Lisa Grillo, Assistant Professor and Doctoral Coordinator; Dr. Dantley, Senior Associate Dean for Academic Affairs; and  Dr. Robert Palmer, Department Chair and Associate Professor, (1) entered a master and servant relationship with Defendants Howard and its Board of Trustees when they were hired and submitted to governance of the Faculty Handbook which governed the performance of their work-related duties, (2) all of the above-named faculty and administration were in the process of Defendants Howard's business as an educational institution when they all participated in Mr. Miller's wrongful dismissal, and (3) all of the above-named faculty and administration were in their scope of employment which includes academic advice and decision-making to include academic dismissal decisions.

117.    Accordingly, Mr. Miller hereby seeks damages in an amount to be determined at trial. It is estimated that Mr. Miller lost a minimum of $150,000.00 in employment and career opportunities, lost the benefit of $348,431.50 in student loan debt, and suffered actual mental and emotional distress, and the acts of the Defendants have forever tarnished his reputation.

**COUNT II**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**Against Howard University and Howard University Board of Trustees**

118.    Plaintiff incorporates herein each and every allegation contained in paragraphs 1 through 117 as if such allegations were set forth herein in their entirety.

26

Doc ID: f3e35a43d790bb23b969be44eb280288b63244d2

119.    Under longstanding D.C. law, courts have held defendants liable for intentional infliction of emotional distress where it can be shown that the defendant's actions were 1) extreme and outrageous, 2) intentional or reckless, and 3) caused Plaintiff severe emotional suffering.

120.    Dr. Cristobal Rodriguez, Dr. Lisa Grillo, Dr. Dantley, and Dr. Robert Palmer's actions, as agents of Defendants Howard and its Board of Trustees, in wrongfully dismissing Plaintiff Mr. Miller from the Educational Administration Guided Leadership Experiences (EAGLE) Program in an extreme, reckless, and outrageous manner that was arbitrary and capricious and not in alignment with Defendant Howard's and its School of Education's policies and procedures as set forth in their respective handbooks.

121.    Defendants Howard and its Board of Trustees, and Dr. Cristobal Rodriguez, Dr. Lisa Grillo, Dr. Dantley, and Dr. Robert Palmer knew or should have known that their decision to dismiss Mr. Miller was arbitrary and capricious when they decided to ignore Mr. Miller's requests to have their decision reviewed according to the informal grievance process set forth in the various handbooks, refused to read Mr. Miller's appeal letter, and made no meaningful effort recognize Mr. Miller's dispute concerning what he considered his wrongful dismissal from the EAGLE Program.

122.    Mr. Miller contends that Dr. Cristobal Rodriguez, Dr. Lisa Grillo, Dr. Dantley, and Dr. Robert Palmer  arbitrarily and capriciously made a dismissal decision against Mr. Miller and then attempted to "gaslight" Mr. Miller into believing that the informal and formal grievance process did not apply to academic disputes which was clearly outrageous, reckless, and intentional conduct.

123.    Defendants Howard and its Board of Trustees, and Dr. Cristobal Rodriguez, Dr. Lisa Grillo, Dr. Dantley, and Dr. Robert Palmer knew that Mr. Miller's dismissal was inequitable.

Doc ID: f3e35a43d790bb23b969be44eb280288b63244d2

They were aware that students enrolled in "filler classes" and that academic advisors often counseled their advisees that these classes were of no consequence because they did not count toward degree work. Mr. Miller was never counseled regarding his performance in his "filler classes" until he was notified via email of his dismissal from the EAGLE Program. These factors should have been considered in Mr. Miller's dismissal decision; however, these factors were not considered. Mr. Miller's requests to avail himself of the informal grievance process were ignored, and his written appeal was unread.

124.    Mr. Miller contends that his wrongful dismissal has caused him to endure severe emotional suffering manifesting in anxiety and depression. Mr. Miller's struggles with repairing his reputation, his emotional balance, his career, and student loan debt and those struggles exacerbate Mr. Miller's emotional suffering.

125.    Pursuant to Article VI, Section 3, <u>Grades and Academic Status</u> of the 2020 Howard University Graduate School Handbook (<u>See</u> Exhibit 28):

> A student will be permitted only two "C" grades. After the student receives a third "C" grade in a Ph.D. program at Howard, they will be dismissed from the Graduate Program. In most instances, the dismissal letter will be sent before the start of the following semester. If it is not, the dismissal is still in effect. Accordingly, students should correspond with their Director of Graduate Studies, Chair, and Academic Dean immediately upon earning the 3rd "C" grade. "C" grades earned at the master's level at Howard University or elsewhere are not included in this count and cannot be counted toward degree requirements.

126.    Mr. Miller contends that he did not receive the third grade "C" in courses in his doctoral program that counted toward the degree requirements of the EAGLE Program; however, Mr. Miller was intentionally and recklessly dismissed from the EAGLE Program without prior counseling or notice.

Doc ID: f3e35a43d790bb23b969be44eb280288b63244d2

127.    Mr. Miller avers that Dr. Cristobal Rodriguez, who was Mr. Miller's academic advisor, never advised Mr. Miller that his grades in the "filler classes" or classes that could not count toward his degree work were problematic in any way.

128.    Mr. Miller contends that Dr. Cristobal Rodriguez also intentionally misrepresented the status of courses for which Mr. Miller had received a grade change in order to offer false evidence to support Mr. Miller's dismissal. Mr. Miller also found this conduct by Dr. Rodriguez to be outrageous, reckless, and intentional.

129.    Mr. Miller contends that he has suffered severe emotional distress as a direct and proximate result of his wrongful and reckless dismissal from the EAGLE Program at Howard University that has manifested as anxiety and depression, which have been exacerbated by the reduction of his status in the education community, the frustration of purpose of his financial aid loans, and loss of employment opportunities.

130.    Mr. Miller avers that the fact that he was in the final stages of his doctoral degree work, also multiplied the degree of the mental and emotional distress that he suffered.

131.    Mr. Miller contends that Defendants Howard and its Board of Trustees and its faculty and administration's negligent acts and omissions and their wrongful dismissal of Mr. Miller from the EAGLE Program were the proximate cause of Mr. Miller's severe emotional distress.

132.    Additionally, Mr. Miller contends that the severe emotional distress that he has suffered was a foreseeable consequence of his wrongful dismissal from the EAGLE Program.

133.    Mr. Miller contends that Defendants Howard and its Board of Trustees are vicariously liable for the tortious acts and omissions of its employees Dr. Cristobal Rodriguez, Academic Advisor; Dr. Lisa Grillo, Assistant Professor and Doctoral Coordinator; Dr. Scott

29

Doc ID: f3e35a43d790bb23b969be44eb280288b63244d2

Dantley, Senior Associate Dean for Academic Affairs; and Dr. Robert Palmer, Department Chair and Associate Professor, because (1) a master and servant relationship existed between employer and employees when they wrongfully dismissed Mr. Miller; (2) that the employees were in the process of their employer's business at the time of they wrongfully dismissed Mr. Miller; and (3) the employees were in the scope of their employment at the time of Mr. Miller's wrongful dismissal.

134.    Mr. Miller contends that Dr. Cristobal Rodriguez, Academic Advisor; Dr. Lisa Grillo, Assistant Professor and Doctoral Coordinator; Dr. Scott Dantley, Senior Associate Dean for Academic Affairs; and Dr. Robert Palmer, Department Chair and Associate Professor, (1) entered a master and servant relationship with Defendants Howard and its Board of Trustees when the were hired and submitted to governance of the Faculty Handbook which governed the performance of their work-related duties, (2) all of the above-named faculty and administration were in the process of Defendants Howard's business as an educational institution when they all participated in Mr. Miller's wrongful dismissal, and (3) all of the above-named faculty and administration were in their scope of employment which includes academic advice and decision-making to include academic dismissal decisions.

135.    As a result, Mr. Miller hereby seeks damages in an amount to be determined at trial.

## COUNT III

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### Against Howard University and Howard University Board of Trustees

136.    Plaintiff incorporates herein each and every allegation contained in paragraphs 1 through 135 as if such allegations were set forth herein in their entirety.

Doc ID: f3e35a43d790bb23b969be44eb280288b63244d2

137.     Under longstanding D.C. law, courts have held defendants liable for the negligent, intentional infliction of emotional distress where it can be proven that the defendant a) has a duty and/or special relationship to the plaintiff, b) defendant breached that duty of care; and c) as a result of defendant's action, the plaintiff was caused severe emotional distress.

138.     Pursuant to academic policies and student grievance procedures set forth in the 2020-2021 Howard University Student Handbook Howard (See Exhibit 29), Defendants Howard and its Board of Trustees had a duty of care to ensure the following procedures were followed:

1. Grant a student who believes that they have been aggrieved an opportunity to attempt to seek an informal resolution with the other party involved in the dispute, e.g., grade dispute with the instructor.

2. If the student is unable to resolve the dispute with the primary party of the dispute, then grant the student an opportunity to seek the intervention of their department chairperson.

3. All disputes which are not resolved at the departmental level are then brought to the Dean's Office, whereupon the Dean or their designee will seek to reach an informal resolution through mediation between the parties.

4. If the mediation at the Dean's level fails, then the student's grievance is consigned to the committee designated by the school/college to address student grievances herein referred to as the Student Grievance Committee.

139.     Pursuant to Articles A1.4, A1.5.2, A1.5.3, and A1.5.4 of the 2020-2021 Howard University Faculty Student Handbook (See Exhibit 30):

1. The ultimate authority and responsibility for both the development of policies and the control and operation of Howard University are vested in a self-perpetuating Board of Trustees as provided in the University's charter.

2. The Provost and Chief Academic Officer are responsible for the overall supervision of the programs and activities of the schools and colleges, other academic units, and the academic support units of the University.

31

Doc ID: f3e35a43d790bb23b969be44eb280288b63244d2

3. Each of the University's deans is responsible for the administration of the school/college; they report to the dean of their school. Deans have responsibilities that may include but are not limited to the following: … academic program development and review; student advising.

4. Each department chair is responsible for administering the academic unit to which they are assigned. The department chair's responsibilities may include but are not limited to the following: program development, review, evaluation, and assessment; student advising.

140.  Pursuant to Article I,  Section 6, <u>Academic and Research Advisement</u> of the 2020 Howard University Graduate Student Handbook (Exhibit 27), Defendant Howard had a special duty of care to "provide graduate faculty advisement for students in the Graduate School, to assign each incoming graduate student an academic advisor who will assist in academic planning throughout matriculation and development of a Program of Study, and to provide a copy of the departmental handbook and/or rules and regulations as applicable."

141.  Pursuant to the District of Columbia Higher Education Law, DCMR 5-A8004.2 provides that a postsecondary degree-granting educational institution shall show that it has and will or will conduct conformance with generally accepted accounting principles and business practices and demonstrate honesty and fair dealing with its employees, its students, the government, and the public.

142.  Pursuant to District of Columbia Higher Education Law, DCMR 5-A8004.9 provides that a postsecondary degree-granting educational institution shall meet the following requirements related to its curricula and programs:

32

Doc ID: f3e35a43d790bb23b969be44eb280288b63244d2

(b) The postsecondary degree-granting educational institution shall maintain … (3) Written policies and procedures for evaluating student performance; (4) A written procedure for the systematic review, evaluation, and modification of curricula and programs of study.

(c) The standards for evaluating student performance shall be fair and adequate.

143.     Pursuant to District of Columbia Higher Education Law, DCMR 5-A8004.13 provides that a postsecondary degree-granting education institution shall offer adequate, sufficient services for students in addition to educational instruction in the classroom and laboratory, including at a minimum: … (d) An adequate program of educational, occupational, and personal counseling and guidance.

144.     As agents/employees of the University, Dr. Rodriguez, Dr. Grillo, Dr. Dantley, and Dr. Palmer were also held to a duty of care to act reasonably and prudently in compliance with and in the administration and execution of all relevant policies, rules, and regulations.

145.     Mr. Miller avers that Defendants Howard, its Board of Trustees, and Dr. Cristobal Rodriguez, Dr. Lisa Grillo, Dr. Dantley, and Dr. Robert Palmer breached their duty of care when they wrongfully dismissed Mr. Miller from the EAGLE Program in a manner that deviated from the policies and procedures set out in the relevant handbooks.

146.     Dr. Cristobal Rodriguez also breached his duty to reasonably and prudently advise Mr. Miller academically, including failing to clarify academic and institutional policies, failing to monitor Mr. Miller's academic progress,  and failing to provide Mr. Miller with exit counseling.

147.     Dr. Lisa Grillo, Dr. Dantley, and Dr. Robert Palmer breached their duty of care to refrain from arbitrary and capricious decision-making by reasonably and prudently complying

Doc ID: f3e35a43d790bb23b969be44eb280288b63244d2

with all relevant policies, rules, and regulations. Dr. Palmer also made a decision regarding Mr. Miller's written appeal without reading the appeal letter that he received from Mr. Miller.

148.    Dr. Grillo, Dr. Dantley, and Dr. Palmer also failed to make any good faith effort to recognize Mr. Miller's request to participate in the informal grievance process. Dr. Palmer intentionally misrepresented to Mr. Miller that academic disputes did not fall within the scope of the informal grievance process.

149.    Mr. Miller contends that Defendants Howard and its Board of Trustees and its faculty and administration's negligent acts and omissions, were the proximate cause of harm to Mr. Miller including actual emotional distress, loss of employment and career opportunities, a lowered reputation and status in the educational community, and the purpose of his student loan indebtedness was frustrated as a direct and proximate result of his wrongful and arbitrary and capricious dismissal from the EAGLE Program at Howard University.

150.    Mr. Miller contends that but for Defendant Howard and its Board of Trustees and its faculty and administration's negligent acts and omissions he would not have been dismissed from the EAGLE Program.

151.    Mr. Miller contends that the harm he has suffered was a foreseeable consequence of his wrongful dismissal from the EAGLE Program.

152.    Mr. Miller contends that Defendants Howard and its Board of Trustees are vicariously liable for the tortious acts and omissions of its employees Dr. Cristobal Rodriguez, Academic Advisor; Dr. Lisa Grillo, Assistant Professor and Doctoral Coordinator; Dr. Dantley, Senior Associate Dean for Academic Affairs; and  Dr. Robert Palmer, Department Chair and Associate Professor because (1) a master and servant relationship existed between employer and employees when they wrongfully dismissed Mr. Miller; (2) that the employees were in the process

Doc ID: f3e35a43d790bb23b969be44eb280288b63244d2

of their employer's business at the time of they wrongfully dismissed Mr. Miller; and (3) the employees were in the scope of their employment at the time of Mr. Miller's wrongful dismissal.

153.   Mr. Miller contends that Dr. Cristobal Rodriguez, Academic Advisor; Dr. Lisa Grillo, Assistant Professor and Doctoral Coordinator; Dr. Dantley, Senior Associate Dean for Academic Affairs; and  Dr. Robert Palmer, Department Chair and Associate Professor., (1) entered a master and servant relationship with Defendants Howard and its Board of Trustees when the were hired and submitted to compliance with Faculty Handbook which governed the performance of their work-related duties, (2) all of the above-named faculty and administration were in the process of Defendants Howard's business as an educational institution when they all participated in Mr. Miller's wrongful dismissal, and (3) all of the above-named faculty and administration were in their scope of employment which includes academic advice and decision-making to include academic dismissal decisions.

154.   Mr. Miller contends that he has suffered severe emotional distress as a direct and proximate result of his wrongful and reckless dismissal from the EAGLE Program at Howard University that has manifested as anxiety and depression, which have been exacerbated by the reduction of his status in the education community, the frustration of purpose of his financial aid loans, and loss of employment opportunities.

155.   Mr. Miller avers that the fact that he was in the final stages of his doctoral degree work, also multiplied the degree of the mental and emotional distress that he suffered.

156.   Mr. Miller contends that Defendants Howard and its Board of Trustees and its faculty and administration's negligent acts and omissions and their wrongful dismissal of Mr. Miller from the EAGLE Program were the proximate cause of Mr. Miller's severe emotional distress.

Doc ID: f3e35a43d790bb23b969be44eb280288b63244d2

157.    Additionally, Mr. Miller contends that the severe emotional distress that he has suffered was a foreseeable consequence of his wrongful dismissal from the EAGLE Program.

158.    As a result, Mr. Miller hereby seeks damages in an amount to be determined at trial.

**COUNT IV**

**BREACH OF CONTRACT**
**Against Howard University and Howard University Board of Trustees**

159.    Plaintiff incorporates herein each and every allegation contained in paragraphs 1 through 158 as if such allegations were set forth herein in their entirety.

160.    Under longstanding case law, a legally actionable claim for breach of contract is recognized when: 1) a valid contract between the parties; 2) an obligation or duty arising out of the contract; 3) a breach of the duty; and 4) damages caused by the breach.

161.    The relevant Student Handbooks of Howard University, its Graduate Schools, and its School of Education created valid contracts between the Defendants and Mr. Miller.

162.    The District of Columbia recognizes as a general rule that there is a relationship between a university and its students that is contractual in nature.

163.    The student handbooks outline the promises, responsibilities, and obligations of the university and its employees, as well as the duties and responsibilities of its students.

164.    Pursuant to Academic Policies, Student Academic Grievance Procedures, and The Informal Process of the 2020-2021 Howard University Student Handbook (See Exhibit 29), Howard and its faculty have a duty of care to:

> 1. Grant a student who believes that they have been aggrieved an opportunity to attempt to seek an informal resolution with the other party involved in the dispute, e.g., a grade dispute with the instructor.

36

Doc ID: f3e35a43d790bb23b969be44eb280288b63244d2

2. If the student is unable to resolve the dispute with the primary party of the dispute, then grant the student an opportunity to seek the intervention of their department chairperson.

3. All disputes which are not resolved at the departmental level are then brought to the Dean's Office, whereupon the Dean or their designee will seek to reach an informal resolution through mediation between the parties.

4. If the mediation at the Dean's level fails, then the student's grievance is consigned to the committee designated by the school/college to address student grievances herein referred to as the Student Grievance Committee.

165.    Pursuant to Articles A1.4, A1.5.2, A1.5.3, and A1.5.4 of the 2020-2021 Howard University Faculty Student Handbook:

1. The ultimate authority and responsibility for both the development of policies and the control and operation of Howard University are vested in a self-perpetuating Board of Trustees as provided in the University's charter.

2. The Provost and Chief Academic Officer are responsible for the overall supervision of the programs and activities of the schools and colleges, other academic units, and the academic support units of the University.

3. Each of the University's deans is responsible for the administration of the school/college. They report to the dean of their school. Deans have responsibilities that may include but are not limited to the following: … academic program development and review; student advising.

4. Each department chair is responsible for administering the academic unit they are assigned. The department chair's responsibilities may include but are not limited to the following: program development, review, evaluation, and assessment; student advising.

166.    Pursuant to Article I,  Section 6, Academic and Research Advisement of the 2020 Howard University Graduate Student Handbook (See Exhibit 27), Defendant Howard has a

Doc ID: f3e35a43d790bb23b969be44eb280288b63244d2

special duty of care to "provide graduate faculty advisement for students in the Graduate School, to assign each incoming graduate student an academic advisor who will assist in academic planning throughout matriculation and development of a Program of Study, and to provide a copy of the departmental handbook and/or rules and regulations as applicable."

167.    The 2019-2020 Student Handbook for Ed.D. Program in Educational Leadership and Policy Studies outlines a dismissal policy that the relevant faculty and administration failed to implement with Mr. Miller's wrongful dismissal. Specifically, Dr. Grillo did not meet with Mr. Miller within 30 days of receipt of Mr. Miller's concerns regarding his dismissal from the EAGLE Program, the Program faculty did recommend a remediation or probation although Mr. Miller's circumstances were not sufficiently severe enough to warrant dismissal. See Exhibit 31.

168.    As agents/employees of the University, Dr. Rodriguez, Dr. Grillo, Dr. Dantley, and Dr. Palmer had a duty of care to act reasonably and prudently in compliance with the relevant policies, rules, and regulations.

169.    Mr. Miller avers that Defendants Howard, its Board of Trustees, and Dr. Cristobal Rodriguez, Dr. Lisa Grillo, Dr. Dantley, and Dr. Robert Palmer breached the duty of care owed to Mr. Miller when they wrongfully dismissed Mr. Miller from the EAGLE Program in a manner that deviated from the policies and procedures set out in the student handbooks.

170.    Dr. Cristobal Rodriguez also breached his duty to reasonably and prudently advise Mr. Miller academically, including failure to clarify academic and institutional policies, failing to monitor Mr. Miller's academic progress, and failing to provide Mr. Miller with exit counseling.

171.    Dr. Lisa Grillo, Dr. Dantley, and Dr. Robert Palmer breached their duty of care to refrain from arbitrary and capricious decision-making by reasonably and prudently complying

38

Doc ID: f3e35a43d790bb23b969be44eb280288b63244d2

with all relevant policies, rules, and regulations. Dr. Palmer also made a decision regarding Mr. Miller's written appeal without reading the appeal letter that he received from Mr. Miller.

172.    Dr. Grillo, Dr. Dantly, and Dr. Palmer also failed to make any good faith effort to recognize Mr. Miller's request to participate in the informal grievance process. Dr. Palmer intentionally misrepresented to Mr. Miller that academic disputes did not fall within the scope of the informal grievance process.

173.    Mr. Miller contends that Defendants Howard and its Board of Trustees and its faculty and administration's negligent acts and omissions, were the proximate cause of harm to Mr. Miller including actual emotional distress, loss of employment and career opportunities, a lowered reputation and status in the educational community, and the purpose of his student loan indebtedness was frustrated as a direct and proximate result of his wrongful and arbitrary and capricious dismissal from the EAGLE Program at Howard University.

174.    Mr. Miller contends that but for Defendant Howard and its Board of Trustees and its faculty's and administration's negligent acts and omissions he would not have been dismissed from the EAGLE Program.

175.    Mr. Miller contends that the harm he has suffered was a foreseeable consequence of his wrongful dismissal from the EAGLE Program.

176.    Mr. Miller contends that Defendants Howard and its Board of Trustees are vicariously liable for the tortious acts and omissions of its employees Dr. Cristobal Rodriguez, Academic Advisor; Dr. Lisa Grillo, Assistant Professor and Doctoral Coordinator; Dr. Scott Dantley, Senior Associate Dean for Academic Affairs; and  Dr. Robert Palmer, Department Chair and Associate Professor because (1) a master and servant relationship existed between employer and employees when they wrongfully dismissed Mr. Miller; (2) that the employees were in the

Doc ID: f3e35a43d790bb23b969be44eb280288b63244d2

process of their employer's business at the time they wrongfully dismissed Mr. Miller; and (3) the employees were in the scope of their employment at the time of Mr. Miller's wrongful dismissal.

177.    Mr. Miller contends that Dr. Cristobal Rodriguez, Academic Advisor; Dr. Lisa Grillo, Assistant Professor and Doctoral Coordinator; Dr. Scott Dantley, Senior Associate Dean for Academic Affairs; and Dr. Robert Palmer, Department Chair and Associate Professor, (1) entered a master and servant relationship with Defendants Howard and its Board of Trustees when the were hired and submitted to compliance with Faculty Handbook which governed the performance of their work-related duties, (2) all of the above-named faculty and administration were all were in the process of Defendants Howard's business as an educational institution when they all participated in Mr. Miller's wrongful dismissal, and (3) all of the above-named faculty and administration were in their scope of employment which includes academic advice and decision-making to include academic dismissal decisions.

178.    Mr. Miller contends that as a result of the breach of contract by Defendants Howard and its Board of Trustees, he suffered actual emotional distress, loss of employment and career opportunities, lowered reputation in the educational community, and frustrated the purpose of his student loan indebtedness as a direct and proximate result of his wrongful and reckless dismissal from the EAGLE Program.

179.    As a result, Mr. Miller hereby seeks damages in an amount to be determined at trial. It is estimated that Mr. Miller lost a minimum of $150,000.00 in employment and career opportunities, lost the benefit of $348,431.50 in student loan debt, and suffered actual mental and emotional distress, and the acts of the Defendants have forever tarnished his reputation.

### COUNT V

**20 U.S. Code § 1092(a)(1)(K) and (b)(1)(A)**
**Against Howard University and Howard University Board of Trustees**

40

180.     Plaintiff incorporates herein each and every allegation contained in paragraphs 1 through 179 as if such allegations were set forth herein in their entirety.

181.     20 U.S. Code § 1092 (b)(1)(A) provides that any eligible institution such as Defendant Howard is required to provide counseling to borrowers of loans at the time of departure from such institution.

182.     Mr. Miller was dismissed from Howard University's School of Education's Educational Leadership and Policy Studies Program; however, Mr. Miller did not receive exit counseling that is provided for in 20 U.S. Code § 1092(b)(1)(A).

183.     Mr. Miller's academic advisor at the time of his departure was Dr. Cristobal Rodriguez, who was aware of Mr. Miller's dismissal from the School of Education; however, Dr. Rodriguez failed to provide Mr. Miller with any exit counseling.

184.     Mr. Miller also contends that Dr. Rodriguez also failed to appropriately counsel Mr. Miller while he was enrolled in the School Education regarding, amongst other things, Mr. Miller's requirement for officially withdrawing from the institution and the standards which the student must maintain in order to be considered to be making satisfactory progress.

185.     20 U.S. Code § 1097 provides criminal penalties for any person who knowingly and willfully embezzles, misapplies, steals, obtains by fraud, false statement, or forgery, or fails to refund any funds, assets, or property provided or insured under this subchapter or attempts to so embezzle, misapply, steal, obtain by fraud, false statement or forgery, or fail to refund any funds, assets, or property, shall be fined not more than $20,000 or imprisoned for not more than five (5) years, or both.

186.     Mr. Miller avers that Dr. Cristobal Rodriguez advised Mr. Miller to take "filler classes," which were classes that he represented to Mr. Miller would not be counted toward his

41

Doc ID: f3e35a43d790bb23b969be44eb280288b63244d2

degree work and would suffer no consequence no matter what grade that he received in those classes. Dr. Rodriguez made these representations to Mr. Miller as a strategy to allow Mr. Miller to meet the enrollment credit hour requirement to allow for his eligibility to receive financial aid.

187.    Mr. Miller contends that Dr. Rodriguez's representations regarding the "filler classes" were false statements to assist in Defendant Howard's procurement of financial aid funds that were not refunded to Mr. Miller.

188.    Mr. Miller contends that Defendants Howard and its Board of Trustees are vicariously liable for the tortious acts and omissions of its employees Dr. Cristobal Rodriguez, Academic Advisor; Dr. Lisa Grillo, Assistant Professor and Doctoral Coordinator; Dr. Dantley, Senior Associate Dean for Academic Affairs; and  Dr. Robert Palmer, Department Chair and Associate Professor, because (1) a master and servant relationship existed between employer and employees when they wrongfully dismissed Mr. Miller; (2) that the employees were in the process of their employer's business at the time of they wrongfully dismissed Mr. Miller; and (3) the employees were in the scope of their employment at the time of Mr. Miller's wrongful dismissal.

189.    Mr. Miller contends that Dr. Cristobal Rodriguez, Academic Advisor; Dr. Lisa Grillo, Assistant Professor and Doctoral Coordinator; Dr. Dantley, Senior Associate Dean for Academic Affairs; and  Dr. Robert Palmer, Department Chair and Associate Professor, (1) entered a master and servant relationship with Defendants Howard and its Board of Trustees when they were hired and submitted to compliance with Faculty Handbook which governed the performance of their work related duties, (2) all of the above named faculty and administration were all were in the process of Defendants Howard's business as an educational institution when they all participated in Mr. Miller's wrongful dismissal, and (3) all of the above named faculty and

Doc ID: f3e35a43d790bb23b969be44eb280288b63244d2

administration were in their scope of employment which include academic advice and decision-making to include academic dismissal decisions.

190.    As a result, Defendants Howard and its Board of Trustees and Dr. Cristobal Rodriguez, Academic Advisor; Dr. Lisa Grillo, Assistant Professor and Doctoral Coordinator; Dr. Dantley, Senior Associate Dean for Academic Affairs; and Dr. Robert Palmer, Department Chair and Associate Professor, should be fined no more than $20,000.00 or imprisoned for not more than five (5) years or both.

## COUNT VI

## DECLARATORY JUDGMENT

191.    Plaintiff incorporates herein each and every allegation contained in paragraphs 1 through 190 as if such allegations were set forth herein in their entirety.

192.    Dr. Cristobal Rodriguez, Dr. Lisa Grillo, and Dr. Robert Palmer, Defendants Howard and its Board of Trustees set forth ambiguous policies and procedures, inconsistently adhered to those policies and procedures, and issued an arbitrary and capricious decision regarding Mr. Miller's dismissal from the EAGLE Program.

193.    Mr. Miller's dismissal from the EAGLE Program was improper and not in accordance with the various applicable student handbooks and relevant policies, procedures, rules, and regulations.

194.    Mr. Miller's dismissal from the EAGLE Program will continue to cause Mr. Miller irreparable harm.

## **PRAYER FOR RELIEF**

Due to the actions of the Defendants, Plaintiff has been placed in an unfair and unfortunate position of being wrongfully dismissed from the EAGLE Program at Howard University at a point

Doc ID: f3e35a43d790bb23b969be44eb280288b63244d2

of the near completion of the program. Mr. Miller has suffered the loss of the credits he accumulated towards the completion of his doctoral degree, actual mental distress, and the degradation of his image in the education community. Mr. Miller avers that his wrongful dismissal has prevented him from entering higher levels of employment in the field of education, and he lost the benefit of the financial aid loan debt he incurred to further his doctoral degree work. On account of this, Plaintiff, Mr. Miller prays for:

    a)  Compensatory, economic, and punitive damages;

    b)  Declaratory judgment;

    c)  Reasonable attorney's fees and costs;

    d)  Pre-and post-judgment interests:

    e)  Court fees; and

    f)  Such other legal or equitable relief as this Court deems just and proper under all the circumstances contained herein.

## JURY DEMAND

Plaintiff demands a trial by jury.

Respectfully submitted this 1st day of October 2022.

**Declaration**

I, the undersigned, declare under penalty of perjury that the foregoing statements made in the foregoing statements made are true and correct to the best of my knowledge, information, and belief.

_____

Winston Miller

  10 / 01 / 2022

_____

Date

44

WINSTON MILLER

By:

Jacobie Whitley, Esq.
D.C. Bar No. 1500314
Law Office of Jacobie K. Whitley, PLLC
1455 Pennsylvania Avenue, NW Suite 400
Washington, D.C. 20004
Phone: (202) 499-2403
Fax:     (202) 499-2402
Email: jwhitley@lawofficeofjkw.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

      The undersigned certifies that a true and correct copy of the foregoing COMPLAINT was served upon:

**HOWARD UNIVERSITY**
2244 10th Street, NW
Washington, D.C. 22059
Served Upon: Registered Agent
John G. Gloster, Jr.
2400 6th Street, N.W., Suite 321
Washington, D.C. 20059

**HOWARD UNIVERSITY BOARD OF TRUSTEES**
2244 10th Street, NW
Washington, D.C. 22059
Served Upon: Registered Agent
John G. Gloster, Jr.
2400 6th Street, N.W., Suite 321
Washington, D.C. 20059

Jacobie Whitley, Esq.

 **HELLOSIGN**

Audit Trail

| | |
|---|---|
| **TITLE** | Hello |
| **FILE NAME** | 1664566192-Complaint.pdf |
| **DOCUMENT ID** | f3e35a43d790bb23b969be44eb280288b63244d2 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ⊚ Signed |

This document was requested on lawofficeofjacobiekwhitleypllc.cliogrow.com and signed on lawofficeofjacobiekwhitleypllc.cliogrow.com

## Document History

| | | |
|---|---|---|
| SENT | **09 / 30 / 2022**<br>19:30:41 UTC | Sent for signature to Winston Miller (millerbwinston@gmail.com) from chenderson@lawofficeofjkw.com IP: 73.39.100.209 |
| VIEWED | **10 / 01 / 2022**<br>15:47:06 UTC | Viewed by Winston Miller (millerbwinston@gmail.com) IP: 164.82.30.23 |
| SIGNED | **10 / 01 / 2022**<br>15:47:31 UTC | Signed by Winston Miller (millerbwinston@gmail.com) IP: 164.82.30.23 |
| COMPLETED | **10 / 01 / 2022**<br>15:47:31 UTC | The document has been completed. |

# Superior Court of the District of Columbia

### CIVIL DIVISION- CIVIL ACTIONS BRANCH
### INFORMATION SHEET

WINSTON MILLER

Case Number: _____

Date: __October 1, 2022__

vs

HOWARD UNIVERISTY &
HOWARD UNIVERSITY BOARD OF TRUSTEES

☒ One of the defendants is being sued
in their official capacity.

| | |
|---|---|
| Name: *(Please Print)*  **Jacobie Whitley** | Relationship to Lawsuit |
| Firm Name:  **Law Office of Jacobie K. Whitley, PLLC.** | ☒ Attorney for Plaintiff |
| Telephone No.:                  Six digit Unified Bar No.:  **(202) 499-2403            1500314** | ☐ Self (Pro Se) |
| | ☐ Other: _____ |

TYPE OF CASE:   ☐ Non-Jury        ☐ 6 Person Jury        ☒ 12 Person Jury

Demand: $ _500,000.00_        Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.:_____   Judge: _____   Calendar #:_____

Case No.:_____   Judge: _____   Calendar#:_____

---

NATURE OF SUIT:        *(Check One Box Only)*

**A. CONTRACTS**                              **COLLECTION CASES**

| | | |
|---|---|---|
| ☐ 01 Breach of Contract | ☐ 14 Under $25,000 Pltf. Grants Consent | ☐ 16 Under $25,000 Consent Denied |
| ☐ 02 Breach of Warranty | ☐ 17 OVER $25,000 Pltf. Grants Consent | ☐ 18 OVER $25,000 Consent Denied |
| ☐ 06 Negotiable Instrument | ☐ 27 Insurance/Subrogation | ☐ 26 Insurance/Subrogation |
| ☐ 07 Personal Property | Over $25,000 Pltf. Grants Consent | Over $25,000 Consent Denied |
| ☐ 13 Employment Discrimination | ☐ 07 Insurance/Subrogation | ☐ 34 Insurance/Subrogation |
| ☐ 15 Special Education Fees | Under $25,000 Pltf. Grants Consent | Under $25,000 Consent Denied |
| | ☐ 28 Motion to Confirm Arbitration | |
| | Award (Collection Cases Only) | |

**B. PROPERTY TORTS**

| | | |
|---|---|---|
| ☐ 01 Automobile | ☐ 03 Destruction of Private Property | ☐ 05 Trespass |
| ☐ 02 Conversion | ☐ 04 Property Damage | |
| ☐ 07 Shoplifting, D.C. Code § 27-102 (a) | | |

**C. PERSONAL TORTS**

| | | |
|---|---|---|
| ☐ 01 Abuse of Process | ☐ 10 Invasion of Privacy | ☐ 17 Personal Injury- (Not Automobile, Not Malpractice) |
| ☐ 02 Alienation of Affection | ☐ 11 Libel and Slander | ☐ 18 Wrongful Death (Not Malpractice) |
| ☐ 03 Assault and Battery | ☐ 12 Malicious Interference | ☐ 19 Wrongful Eviction |
| ☐ 04 Automobile- Personal Injury | ☐ 13 Malicious Prosecution | ☐ 20 Friendly Suit |
| ☐ 05 Deceit (Misrepresentation) | ☐ 14 Malpractice Legal | ☐ 21 Asbestos |
| ☐ 06 False Accusation | ☐ 15 Malpractice Medical (Including Wrongful Death) | ☐ 22 Toxic/Mass Torts |
| ☐ 07 False Arrest | ☒ 16 Negligence- (Not Automobile, Not Malpractice) | ☐ 23 Tobacco |
| ☐ 08 Fraud | | ☐ 24 Lead Paint |

SEE REVERSE SIDE AND CHECK HERE        IF USED

CV-496/June 2015

# Information Sheet, Continued

## C. OTHERS

☐ 01 Accounting
☐ 02 Att. Before Judgment
☐ 05 Ejectment
☐ 09 Special Writ/Warrants
  (DC Code § 11-941)
☐ 10  Traffic Adjudication
☐ 11 Writ of Replevin
☐ 12 Enforce Mechanics Lien
☐ 16 Declaratory Judgment

☐ 17 Merit Personnel Act (OEA)
  (D.C. Code Title 1, Chapter 6)
☐ 18 Product Liability

☐ 24 Application to Confirm, Modify,
  Vacate Arbitration Award (DC Code § 16-4401)
☐ 29 Merit Personnel Act (OHR)
☐ 31 Housing Code Regulations
☐ 32 Qui Tam
☐ 33 Whistleblower

## II.

☐ 03 Change of Name
☐ 06 Foreign Judgment/Domestic
☐ 08 Foreign Judgment/International
☐ 13 Correction of Birth Certificate
☐ 14 Correction of Marriage
  Certificate
☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
☐ 27 Petition for Civil Asset Forfeiture (Currency)
☐ 28 Petition for Civil Asset Forfeiture (Other)

☐ 15 Libel of Information
☐ 19 Enter Administrative Order as
  Judgment [ D.C. Code §
  2-1802.03 (h) or 32-151 9 (a)]
☐ 20 Master Meter (D.C. Code §
  42-3301, et seq.)

☐ 21 Petition for Subpoena
  [Rule 28-I (b)]
☐ 22 Release Mechanics Lien
☐ 23 Rule 27(a)(1)
  (Perpetuate Testimony)
☐ 24 Petition for Structured Settlement
☐ 25 Petition for Liquidation

## D.  REAL PROPERTY

☐ 09 Real Property-Real Estate
☐ 12 Specific Performance
☐ 04 Condemnation (Eminent Domain)
☐ 10 Mortgage Foreclosure/Judicial Sale
☐ 11 Petition for Civil Asset Forfeiture (RP)

☐ 08 Quiet Title
☐ 25 Liens: Tax / Water Consent Granted
☐ 30 Liens: Tax / Water Consent Denied
☐ 31 Tax Lien Bid Off Certificate Consent Granted

_Jacobie Whitley_                                    October 1, 2022
_____                    _____
Attorney's Signature                                      Date



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

WINSTON MILLER
_____
Plaintiff

vs.

HOWARD UNIVERISTY &                        Case Number _____
HOWARD UNIVERSITY BOARD OF TRUSTEES
_____
Defendant

**SUMMONS**

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Jacobie Whitley, Esq.
_____          _Clerk of the Court_
Name of Plaintiff's Attorney

1455 Pennsylvania Ave., NW Ste. 400            By _____
Address                                                    Deputy Clerk
Washington, D.C. 20004

(202) 499-2403                                      Date _____
Telephone
如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828로 전화주시기 바랍니다        የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                         Super. Ct. Civ. R. 4




**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
DIVISIÓN CIVIL
**Sección de Acciones Civiles**
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

WINSTON MILLER
_____
Demandante
contra
HOWARD UNIVERSITY BOARD OF TRUSTEES &          Número de Caso: _____
HOWARD UNIVERISTY
_____
emandado

### CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

Jacobie Whitley, Esq.
_____
Nombre del abogado del Demandante

1455 Pennsylvania Ave.,NW, Ste. 400
_____
Dirección
Washington, D.C. 20004

(202) 499-2403
_____
Teléfono

_SECRETARIO DEL TRIBUNAL_

Por: _____
                        Subsecretario

Fecha _____

如需翻译, 请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828

한국어로 번역을 원하시면 (202) 879-4828 로 연락주십시오      የአማርኛ ትርጉም ለማግኘት- (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO._

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedirayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                                                                                    Super. Ct. Civ. R. 4

EXHIBIT
**1**

## Section 3. Grades and Academic Status

A cumulative grade point average of 3.00 (B) is required for graduation.

A student will be permitted only two "C" grades. After the student receives a third "C" grade in a Ph.D. program at Howard, he/she will be dismissed from the Graduate Program. In most instances, the dismissal letter will be sent prior to the start of the following semester.  If it is not, the dismissal is still in effect.  Accordingly, students should correspond with their Director of Graduate Studies, Chair, and Academic Dean immediately upon earning the 3rd C grade. "C" grades earned at the master's level at Howard University or elsewhere are not to be included in this count and cannot be counted toward degree requirements.

A student who falls below 3.00 GPA will  be  given due notice by the Graduate School that he/she must raise his/her quality point index to 3.00 in the next two terms in residence. Students failing to do so will be dismissed from the Graduate School. In most instances, the dismissal letter will be sent prior to the start of the following semester.  If it is not, the dismissal is still in effect. Accordingly, students should correspond with their Director of Graduate Studies, Chair, and Academic Dean immediately upon earning the 3rd C grade.

A student who demonstrates an inability to perform satisfactorily at the graduate level may be recommended for dismissal.

## Section 4. Program of Study

Each department in which the student is enrolled shall specify the programs and the requirements for each matriculating degree student. An approved Program of Study for each student must be filed with the Graduate School no later than the end of the first semester in residence. The responsibility of submitting the individualized Program of Study is that of the student. Failure to do so in a timely manner may result in suspension of enrollment privileges at the University.

## Section 5. Earned Credit Transferal to the Ph.D. Degree

Students holding a bachelor's degree who were admitted directly into the Ph.D. program may—with the approval of the Committee on Graduate Studies—transfer a maximum of 18 semester credit hours of graduate credits with a grade of B or better into  the  Ph.D. program.

Students holding a Master's degree from a recognized accredited institution (this includes Howard University) or an equivalent international institution may transfer  no  more than 24 graduate course credits with a grade of B or better into the Ph.D. program, dependent upon approval of the Committee on Graduate Studies in the major department.  Official transcripts must accompany any request for transfer of credits.

EXHIBIT

**2**

Inbox

E

**Endale, Menbere <mendale@howard.edu>**                    Wed, Nov 28, 2018, 11:52 AM

to ELPSedDStudents@bison.howard.edu

Greetings!

Students applying to take the EdD Qualifying Exam (Preliminary or Comprehensive) in Spring of 2019 will need to attend the Qualifying Exam Orientation **on Friday, December 7 from 4pm to 5pm.** Please complete the attached application and submit to

Ms. Endale Friday, December 14, in AS-A room 130.

Additionally, after the orientation on December 7 from 5 to 7pm, ELPS will be hosting a department pot luck, so that you can connect and celebrate another semester and progress with ELPS students.

Thanks!

Attachments area

Endale, Menbere (howard.edu), Grillo, Lisa M (howard.edu), Rodriguez, Cristobal (howard.edu)

EXHIBIT

**3**

Inbox



**Palmer, Robert <robert.palmer@howard.edu>**                                    Wed, Nov 28, 2018, 8:43 PM

to me, Lisa, Cristobal

Dear Winston Miller

We have graded your Preliminary Exam, and you have passed the Research portion, but failed the Administrative portion of your Fall, 2018 Examination. Below are the results of how you scored on each section. Please note that the scoring is on a scale of 0-5, in which 3.0 is the minimum passing score, and passing all sections of the Administration Portion is a requirement to pass the Administration Portion, and passing the Research portion is a separate score by itself. I invite you to follow up with myself regarding your score and about retaking only the Administrative portion of the Preliminary Exam in the spring of 2019. You will have one more opportunity to pass the Preliminary Exam in order to continue in the ELPS Ed.D. Program.

Administration – Failed

Part A: Visionary Leadership – 1.95

Part B: Instructional Leadership and Management – 1.42

Part C: Community and External Influences – 3.01

Research- 3.15 - Passed

I also invite you to follow up with Dr. Rodriguez as your advisor regarding your overall progress.

Robert T. Palmer, Ph.D.

EXHIBIT

4

Rodriguez, Cristobal <cristobal.rodriguez@howard.edu>                    Jan 10, 2020, 3:23 PM

to Robert, me, Scott, Lisa, Brandy

Greeting, after thoroughly reviewing Mr. Winston Miller's transcripts, I need to clarify the following grades and I will work on the updates. Nonetheless, Mr. Miller still falls out of academic compliance.
Fall of 2016: ELPS 517 Workshop on Leadership Development with Dr. Hairston, the grade is an I, but I do have a letter signed from Dr. Hairston on 8/28/18 that this course is to change to an A.
Spring 2018: HUDE 306 Independent Study with Dr. Ellison, 1 credit, received an F, I verbally agreed with Dr. Ellison in May of 2018, about the work being done to have this grade changed to an A, in which I was charged to follow up with Dr. Ellison. I will need to follow up.
The Remaining Unacceptable Grades for falling out of compliance are as Follows based on current transcripts:
Fall 2016 ELPS 435 HR Mgmt, D, 3 credits
Spring 2019 ELPS 616 Black Women in HE Leadership, IF, 3 credits (this is an Incomplete until it is changed before the end of the next semester, if not it automatically is treated as an F. After speaking with Dr. Carter, the work was not completed by the deadline and therefore an F.
Summer 2019 ELPS 506 Independent Study, D, 1 Credit
Summer 2019 ELPS 611 Board and Community Relations, C, 3 Credits
Fall 2019 ELPS 599 Dissertation Seminar, D, 3 Credits

I will add that since Mr. Miller was not permitted to take his Comprehensive Exam in the Fall of 2019 as he did not meet the application requirements, he remained in ELPS 599, but should not have done so given that this course is to only be taken simultaneously when taking the Comp. Exam or after it is passed.

Mr. Miller also has an Incomplete grade from Spring 2016 ELPS 506 Independent Study, 1 Credit. But not sure with who. I also have a transfer of credit request for Case Law from Trinity University from Summer 2018 for an A and the respective transcript, which needs to be submitted and processed.

In Truth and Service,
Cristóbal Rodríguez, Ph.D.
Director of Graduate Studies, School of Education, Howard University
Associate Professor of Educational Leadership and Policy Studies
Charles H Thompson Lecture-Colloquium Committee Chair
IDRA 2019 José A. Cárdenas School Finance Fellow
AERA Latina/o/x Research Issues SIG Immediate Past-Chair
2441 4th Street, NW, Room 117, Washington, DC 20059



**EXHIBIT**

**5**

Clare Hende ~~...~~ kw.com>

---

## Fwd: FENWICK re ELPS 599 GRADE

1 message

**Winston Miller** <millerbwinston@gmail.com>                                     Sat, Sep 10, 2022 at 7:54 PM
To: Clare Henderson <chenderson@lawofficeofjkw.com>

fyi - Dissertation Seminar grade/course with Dr. Leslie Fenwick

---------- Forwarded message ---------
From: **Miller, Winston** <winston.miller@bison.howard.edu>
Date: Thu, Feb 6, 2020 at 9:34 PM
Subject: Fwd: FENWICK re ELPS 599 GRADE
To: <millerbwinston@gmail.com>

---------- Forwarded message ---------
From: **Fenwick, Leslie T.** <lfenwick@howard.edu>
Date: Thu, Dec 26, 2019 at 12:23 PM
Subject: FENWICK re ELPS 599 GRADE
To: Miller, Winston <winston.miller@bison.howard.edu>

Dear Mr. Miller:

You earned a D grade in ELPS 599, Dissertation Seminar. This grade is due to failing to submit required assignments (which are detailed in the course syllabus, were reviewed in class and discussed in our individual phone conference session). You failed to submit the following:

1. The draft Dissertation Proposal (Chapters 1-3)
2. Evidence of  CITI certification course completition via email of certificate copies (indicating passing grades in all) to me
3. A copy of your draft Dissertation Proposal PowerPoint presentation to me and the class during your Dissertation Proposal Draft presentation

Though you did not submit a draft Dissertation Proposal or a PowerPoint presentation using the required template, during your oral presentation you provided an overview of your research topic which is substantive and timely. It is clear to me that you have begun to seriously think about the conceptual and methodological issues related to your proposed research topic. For this reason, you did not earn an F. However, you must complete the course assignments to receive a passing grade for ELPS 599, Dissertation Seminar.

Please review the attached syllabus and complete the required work no later than **March 15, 2019**. If you have questions about the requirements, you may sit in on the first 2-3 lectures for the spring semester 2019 administration of  ELPS 599. Kindly note that I am not required to extend these options to you, but am doing so to assist the progress of your dissertation research.

If your work is submitted to me (via email) by the required deadline and warrants a passing grade, I will change the D grade to the passing grade earned. If I do not receive the required work by the deadline, the D grade stands. You will be required to enroll in the course again and earn a passing grade.


Please indicate via reply email that you agree to and understand the conditions under which you will be assigned a new grade.


Sincerely,
Dr. Fenwick


Leslie T. Fenwick, PhD

Dean Emeritus and Professor

Howard University School of Education

2017-2020 MCLC Senior Fellow, United States Military Academy at West Point

Scholarly Advisory Committee (SAC), Smithsonian National Museum of African American History and Culture (NMAAHC)

---

**ELPS 599 DISSERTATION SEMINAR fall 2019.docx**
30K



Clare Henderson <chenderson@lawofficeofjkw.com>

## Fwd:

1 message

**Winston Miller** <millerbwinston@gmail.com>                                         Sat, Sep 10, 2022 at 7:56 PM
To: Clare Henderson <chenderson@lawofficeofjkw.com>

fyi - text message with Dr. Leslie Fenwick

---------- Forwarded message ---------
From: **Winston Miller** <millerbwinston@gmail.com>
Date: Sat, Sep 10, 2022 at 7:39 PM
Subject:
To: Winston Miller <millerbwinston@gmail.com>

Good morning, Winston: I just emailed you feedback. Also, I don't yet see Ch. 2. Finally, with regard to the ELPS 599 course requirements, you need to send me your CITI certificates -- refer to course syllabus if you've forgotten about what I'm referencing. As soon as I receive all requirements, I'll grade your work and assign a grade.



**Clare Henderson <chenderson@lawofficeofjkw.com>**

## Fwd:

1 message

**Winston Miller** <millerbwinston@gmail.com>                                     Sat, Sep 10, 2022 at 7:55 PM
To: Clare Henderson <chenderson@lawofficeofjkw.com>

fyi - text message with Dr. Leslie Fenwick

---------- Forwarded message ---------
From: **Winston Miller** <millerbwinston@gmail.com>
Date: Sat, Sep 10, 2022 at 7:38 PM
Subject:
To: Winston Miller <millerbwinston@gmail.com>

Thanks for the promoter, Winston! I'll be sure to read and evaluate ur work by week's end. If u don't hear from me by
THURSDAY, please send another promoter text. BTW, did u include ur PowerPoint with ur proposal draft. If not please go
back to the template I provided and do so. It's part of the assignment.



‹   Ⓓ   **Dr. Leslie F...**   ⌄   ⋮

certificates
Chapter 2 will be
sent this week
Thank you
Winston Miller

4:05 PM

Understood!
Please send ALL
requirements in 1
email when u hv
finished everything.
This way I can
ensure that I've
rec'd all course
requirements.

4:11 PM

Monday, October 12, 2020

7:31 AM   Understood I will

Tuesday, October 26, 2021



Good evening Dr
Fenwick

EXHIBIT

**6**





EXHIBIT
**7**





EXHIBIT

**8**

EXHIBIT
9

From: **Palmer, Robert** <robert.palmer@howard.edu>
Date: Fri, Jan 10, 2020 at 1:05 PM
Subject: Letter about your Academic Performance in the HUSOE
To: Miller, Winston <winston.miller@bison.howard.edu>
Cc: Dantley, Scott J <scott.dantley@howard.edu>, Rodriguez, Cristobal <cristobal.rodriguez@howard.edu>, Grillo, Lisa M <lisa.grillo@howard.edu>, Jackson, Brandy <brandy.jackson@howard.edu>

January 10, 2020

Dear Mr. Winston Miller,

It has been brought to my attention that you have earned more than two grades below a B- in your graduate coursework toward your doctoral degree in Educational Leadership and Policy Studies.

According to the ELPS Ed.D. handbook:

"Students are expected to complete a minimum of 66 graduate credits (inclusive of dissertation credits) for the degree. They are expected to progress full time toward the degree. Students are expected to maintain a cumulative grade point average of 3.0 (B) or above throughout their tenure in the program; students are permitted only two grades below a B-, and will be dismissed from the program after a third grade below B-. Students failing to raise their grade point average will be dismissed from the HUSOE."

Specifically, you have earned the following:

* Independent Study- Spring 2018- F
* Independent Study- Summer-2019- D
* Board and Community Relations- Summer 2019- C
* Dissertation Seminar- Fall 2019- D

Given your current academic performance, you are in violation of the noted regulation, therefore, you are currently

dismissed from the HUSOE. If you are registered for any courses for Spring 2020, please consult with Ms. Brandy Jackson to withdrawal from these courses. Failure to do so will result in you being financially responsible for all registered courses.

Per university policy, you must sit out for at least one semester after which, you will have the option to reapply to the Ed.D. Program for Fall, 2020.

If you have any questions or concerns, please do not hesitate to contact me or Dr. Rodriguez, your academic advisor.

Robert T. Palmer, Ph.D.

Department Chair and

Associate Professor,

Educational Leadership and Policy Studies

(202) 806-7347

Research website: http://works.bepress.com/robert_palmer/

Pronouns: He/Him/His

Please consider submitting a book proposal that aligns with ACPA's Strategic Imperative for Racial Justice and Decolonization.

More information: http://www.myacpa.org/publications/sirjd-book-proposals<https://nam04.safelinks.protection.outlook.com/?url=http%3A%2F%2Fwww.myacpa.org%2Fpublications%2Fsirjd-book-proposals&data=02%7C01%7C%7C74c44118e09f46c53b5a08d795f79e10%7C02ac0c07b75f46bf9b133630ba94bb69%7C0%7C0%7C637142763061265015&sdata=haeDSimAju5cVF6GsAb9ZUF%2BmVL7DV8jnwtgYr%2F%2FiY4%3D&reserved=0>.

Have questions? Contact the Editor, Robert T. Palmer, Ph.D.

[Quoted text hidden]

# HOWARD UNIVERSITY
### Office of the Registrar
Washington, D.C.

Student No: @00049698 ...869

Date Issued: 06-JUN-2019
ETRN

Page: 1

**EXHIBIT 10**

Record of: Winston Miller
Current Name: Winston Miller
4710 Martin Luther King Jr. Av
#102
Washington, DC 20032

Issued To: MCPS

Course Level: Graduate

Current Program
Doctor of Education
Program : EDD-Ed Leadership & Policy
College : School of Education
Campus : Main

Degree Awarded Master of Divinity 12-MAY-2001
Primary Degree
College : School of Divinity
Campus : East/Divinity
Major : Religion

| SUBJ | NO. | C | COURSE TITLE | CRED | GRD | PTS | R |
|------|-----|---|--------------|------|-----|-----|---|

**INSTITUTION CREDIT:**

Fall 1999
School of Divinity
Religion
Transfer

| SUBJ | NO. | C | COURSE TITLE | CRED | GRD | PTS | R |
|------|-----|---|--------------|------|-----|-----|---|
| BSNT | 201 | E | Intro to New Testament I | 3.00 | B | 9.00 | |
| FDSM | 203 | E | Ministry and Contextualization | 4.00 | A | 16.00 | |
| FDSM | 205 | E | Faith Dev Spirit Form: Sem 1 | 0.50 | B | 1.50 | |
| SCRL | 220 | E | World Religions | 3.00 | B | 9.00 | |
| STMI | 370 | M | Intro Church Music & Worship | 3.00 | A | 12.00 | |

Ehrs: 13.50 GPA-Hrs: 13.50   QPts: 47.50 GPA: 3.52

Spring 2000
School of Divinity
Religion
Continuing

| SUBJ | NO. | C | COURSE TITLE | CRED | GRD | PTS | R |
|------|-----|---|--------------|------|-----|-----|---|
| BSNT | 202 | E | Intro to New testament II | 3.00 | B | 9.00 | |
| FDSM | 206 | E | Faith Dev Spirit Form: Sem 2 | 0.50 | B | 1.50 | |
| FDSM | 465 | E | Senior Colloquy | 2.00 | B | 6.00 | |
| STMI | 303 | E | History & Philosophy Rel Educ | 0.00 | W | 0.00 | |

******************** CONTINUED ON NEXT COLUMN ********************

| SUBJ | NO. | C | COURSE TITLE | CRED | GRD | PTS | R |
|------|-----|---|--------------|------|-----|-----|---|

Institution Information continued:

| STMI | 305 | E | Ministry in the Small Church | 3.00 | A | 12.00 | |
| STMI | 320 | E | Women in Ministry | 0.00 | W | 0.00 | |

Ehrs: 8.50 GPA-Hrs: 8.50   QPts: 28.50 GPA: 3.35
Good Standing

Fall 2000
School of Divinity
Religion
Continuing

| BSNT | 455 | E | Prophetic Min-New Testament | 4.00 | B | 12.00 | |
| FDSM | 305 | E | Faith Dev Spirit Form: Sem 3 | 0.50 | B | 1.50 | |
| STMI | 345 | E | Field Education | 2.00 | A | 8.00 | |
| STMI | 350 | E | Field Education | 3.00 | A | 12.00 | |
| THEO | 305 | E | Systematic Theology I | 3.00 | B | 9.00 | |

Ehrs: 12.50 GPA-Hrs: 12.50   QPts: 42.50 GPA: 3.40
Good Standing

Spring 2001
School of Divinity
Religion
Continuing

| FDSM | 406 | E | Faith Dev Spirit Form: Sem 6 | 0.50 | A | 2.00 | |
| HISU | 220 | E | History of the Black Church | 3.00 | B | 9.00 | |
| STMI | 222 | E | Pastoral Care: Practicum | 0.00 | W | 0.00 | |
| STMI | 303 | E | History & Philosophy Rel Educ | 4.00 | C | 8.00 | |

Ehrs: 7.50 GPA-Hrs: 7.50   QPts: 19.00 GPA: 2.53
Good Standing

Fall 2013
School of Education
Educ Leadership & Policy
First-Time Graduate

| EDAP | 506 | M | Independent Study | 1.00 | A | 4.00 | |
| EDAP | 514 | M | Org Change in Educ | 3.00 | A | 12.00 | |

Ehrs: 4.00 GPA-Hrs: 4.00   QPts: 16.00 GPA: 4.00
Good Standing

******* CONTINUED ON PAGE *****





TRANSCRIPT OFFICIAL AND VALID ONLY WITH BLUE SIGNATURE AND SEAL

REGISTRAR

VALID ONLY WITH SILVER
HOWARD UNIVERSITY SEAL

THE FACE OF THIS TRANSCRIPT HAS A BLUE AND RED BACKGROUND ON WHITE PAPER AND CONTAINS  VOID PANTOGRAPH  CHEMICAL PROTECTION  MICROPRINT  GENUINE WATERMARK  VISIBLE FIBERS AND SILVER HOLOGRAPHIC SEAL

# HOWARD UNIVERSITY
## Office of the Registrar
### Washington, D.C.



Student No: 800049698

Date Issued: 06-JUN-2019
ETRN

Record of: Winston Miller
Level: Graduate

Page: 2

| SUBJ | NO. | C | COURSE TITLE | CRED | GRD | PTS | R | SUBJ | NO. | C | COURSE TITLE | CRED | GRD | PTS | R |
|------|-----|---|--------------|------|-----|-----|---|------|-----|---|--------------|------|-----|-----|---|

Institution Information continued:

Spring 2014
  School of Education
  Educ Leadership & Policy
  Continuing
ELPS 422  M  Seminar in Education Policy   3.00 B    9.00
ELPS 506  M  Independent Study             1.00 A    4.00
    Ehrs:  4.00 GPA-Hrs: 4.00    QPts:   13.00 GPA:  3.25
Good Standing

Fall 2014
  School of Education
  Educ Leadership & Policy
  Continuing
ELPS 284  M  Public School Administration  3.00 A   12.00
ELPS 506  M  Independent Study             1.00 A    4.00
    Ehrs:  4.00 GPA-Hrs: 4.00    QPts:   16.00 GPA:  4.00
Good Standing

Spring 2015
  School of Education
  Educ Leadership & Policy
  Continuing
ELPS 455  M  Ethics of Decision Making     3.00 A   12.00
ELPS 506  M  Independent Study             1.00 A    4.00
    Ehrs:  4.00 GPA-Hrs: 4.00    QPts:   16.00 GPA:  4.00
Good Standing

Fall 2015
  School of Education
  Educ Leadership & Policy
  Continuing
ELPS 506  M  Independent Study             1.00 A    4.00
ELPS 521  M  Educational Admin & Governance 3.00 A  12.00
    Ehrs:  4.00 GPA-Hrs: 4.00    QPts:   16.00 GPA:  4.00
Good Standing
***************** CONTINUED ON NEXT COLUMN *****************

Spring 2016
  School of Education
  Educ Leadership & Policy
  Continuing
ELPS 506  M  Independent Study             1.00 I    0.00
ELPS 518  M  Politics of Education         3.00 B    9.00
    Ehrs:  3.00 GPA-Hrs: 3.00    QPts:    9.00 GPA:  3.00
Good Standing

Summer 2016
  School of Education
  Educ Leadership & Policy
  Continuing
ELPS 520  M  Financial Mgmt in Education   3.00 B    9.00
FDSM 305  M  Faith Dev Spirit Formation    0.50 B    1.50
FDSM 405  M  Faith Dev Spirit Formation    0.50 A    2.00
    Ehrs:  4.00 GPA-Hrs: 4.00    QPts:   12.50 GPA:  3.13

Fall 2016
  School of Education
  Educ Leadership & Policy
  Continuing
ELPS 435  M  Human Resource Mgmt           3.00 D    3.00
ELPS 517  M  Workshop on Leadership Dev    3.00 I    0.00
    Ehrs:  3.00 GPA-Hrs: 3.00    QPts:    3.00 GPA:  1.00
Good Standing

Spring 2017
  School of Education
  Educ Leadership & Policy
  Continuing
ELPS 506  M  Independent Study             1.00 P    0.00
******************** CONTINUED ON PAGE 3 ********************



**TRANSCRIPT OFFICIAL AND
VALID ONLY WITH BLUE
SIGNATURE AND SEAL**

REGISTRAR

VALID ONLY WITH SILVER
HOWARD UNIVERSITY SEAL

THE FACE OF THIS TRANSCRIPT HAS A BLUE AND RED BACKGROUND ON WHITE PAPER AND CONTAINS: VOID PANTOGRAPH, CHEMICAL PROTECTION, MICROPRINT, GENUINE WATERMARK, VISIBLE FIBERS AND SILVER HOLOGRAPHIC SEAL.

# HOWARD UNIVERSITY
## Office of the Registrar
### Washington, D.C.



Student No: @00049698

Date Issued: 06-JUN-2019
ETRN

Record of: Winston Miller
Level: Graduate

Page: 3

| SUBJ | NO. | C | COURSE TITLE | CRED GRD | PTS R |
|------|-----|---|--------------|----------|-------|

Term Information continued:
Educ Leadership & Policy
Continuing

Institution Information continued:

ELPS 519   M   Info Tech School Mgmt (online)   3.00 A   12.00
   Ehrs:   4.00 GPA-Hrs: 3.00   QPts:   12.00 GPA:   4.00
Good Standing

Summer 2017
  School of Education
  Educ Leadership & Policy
  Continuing
ACAD 302   M   Academic Comm (Grad Only)   1.00 P   0.00
GLAW 500   M   Legal Environment   3.00 A   12.00
   Ehrs:   4.00 GPA-Hrs: 3.00   QPts:   12.00 GPA:   4.00

Fall 2017
  School of Education
  Educ Leadership & Policy
  Continuing
ELPS 506   M   Independent Study   3.00 B   9.00
   Ehrs:   3.00 GPA-Hrs: 3.00   QPts:   9.00 GPA:   3.00
Good Standing
IN PROGRESS WORK
CARG 303   M   Acad Com II (GR Only)   1.00 IN PROGRESS
   In Progress Credits   1.00

Spring 2018
  School of Education
  Educ Leadership & Policy
  Continuing
ELPS 524   M   Qualitative Research   3.00 B   9.00
HUDE 306   M   Independent Study I   1.00 F   0.00
   Ehrs:   3.00 GPA-Hrs: 4.00   QPts:   9.00 GPA:   2.25
Good Standing

Summer 2018
  School of Education
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* CONTINUED ON NEXT COLUMN \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| SUBJ | NO. | C | COURSE TITLE | CRED GRD | PTS R |
|------|-----|---|--------------|----------|-------|

HUDE 400   M   Intermediate Statistics   3.00 B   9.00
HUDE 503   M   Directed Individual Study   1.00 A   4.00
   Ehrs:   4.00 GPA-Hrs: 4.00   QPts:   13.00 GPA:   3.25

Fall 2018
  School of Education
  Educ Leadership & Policy
  Continuing
ELPS 584   M   Intern in Education Admin   6.00 A   24.00
   Ehrs:   6.00 GPA-Hrs: 6.00   QPts:   24.00 GPA:   4.00
Good Standing

Spring 2019
  School of Education
  Educ Leadership & Policy
  Continuing
ELPS 506   M   Independent Study   1.00 A   4.00
ELPS 616   M   Blk Women in HighEd Ldshp   3.00 IF   0.00
   Ehrs:   1.00 GPA-Hrs: 4.00   QPts:   4.00 GPA:   1.00
Good Standing

Summer 2019
IN PROGRESS WORK
ELPS 506   M   Independent Study   1.00 IN PROGRESS
ELPS 611   M   Board & Community Relations   3.00 IN PROGRESS
   In Progress Credits   4.00

Fall 2019
IN PROGRESS WORK
ELPS 506   M   Independent Study   1.00 IN PROGRESS
ELPS 599   M   Dissertation Seminar   3.00 IN PROGRESS
   In Progress Credits   4.00

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* CONTINUED ON PAGE  4  \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*



**TRANSCRIPT OFFICIAL AND VALID ONLY WITH BLUE SIGNATURE AND SEAL**

REGISTRAR

VALID ONLY WITH SILVER
HOWARD UNIVERSITY SEAL

THE FACE OF THIS TRANSCRIPT HAS A BLUE AND RED BACKGROUND ON WHITE PAPER AND CONTAINS: VOID PANTOGRAPH, CHEMICAL PROTECTION, MICROPRINT, GENUINE WATERMARK, VISIBLE FIBERS AND SILVER HOLOGRAPHIC SEAL.

# HOWARD UNIVERSITY
## Office of the Registrar
Washington, D.C.



```
Student No: @00049698                                              Date Issued: 06-JUN-2019
                                                                                      ETRN
   Record of: Winston Miller
        Level: Graduate                                           Page:     4


********************* TRANSCRIPT TOTALS *********************
                   Earned Hrs  GPA Hrs    Points     GPA
TOTAL INSTITUTION     97.00     99.00    322.00     3.25

TOTAL TRANSFER         0.00      0.00      0.00     0.00

OVERALL               97.00     99.00    322.00     3.25
********************* END OF TRANSCRIPT *********************
```



VALID ONLY WITH SILVER
HOWARD UNIVERSITY SEAL



**TRANSCRIPT OFFICIAL AND
VALID ONLY WITH BLUE
SIGNATURE AND SEAL**

REGISTRAR

THE FACE OF THIS TRANSCRIPT HAS A BLUE AND RED BACKGROUND ON WHITE PAPER AND CONTAINS: VOID PANTOGRAPH, CHEMICAL PROTECTION, MICROPRINT, GENUINE WATERMARK, VISIBLE FIBERS AND SILVER HOLOGRAPHIC SEAL.

P

EXHIBIT
**11**



EXHIBIT

**12**



EXHIBIT

**13**

**Miller, Winston <winston.miller@bison.howard.edu>**                    Jan 13, 2020, 6:44 PM

to Robert, Lisa, Cristobal, Scott

Dr. Palmer,

Per the policy, sent by you, under Dismissal Procedures:

1. Upon receiving notice of a concern, complaint, or charge concerning a student, the program coordinator will meet with the student and may advise him/her to seek informal methods of resolution with the member(s) raising the concern, complaint, or charge.

I have yet to be notified by the program coordinator, Dr. Grillo, to attend such a meeting in an attempt to utilize the informal process as recommended.

Are you responding for Dr. Grillo? If so, am I being denied the informal process and only selected parts of the student handbook being applied?

Thank you for your recommendation. I will follow up with Dr. Rodriguez regarding your suggestion. It is very helpful.

Sincerely,
W. Miller



**Miller, Winston <winston.miller@bison.howard.edu>**                    Jan 13, 2020, 6:47 PM

to Lisa, Cristobal, Robert, Scott

EXHIBIT

**14**

to millerbwinston

---------- Forwarded message ----------
From: **Rodriguez, Cristobal** <cristobal.rodriguez@howard.edu>
Date: Mon, Jan 13, 2020 at 9:50 AM

Subject: Re: Revised letter for Mr. Winston Miller
To: Miller, Winston <winston.miller@bison.howard.edu>, Palmer, Robert <robert.palmer@howard.edu>
Cc: Dantley, Scott J <scott.dantley@howard.edu>, Grillo, Lisa M <lisa.grillo@howard.edu>

Mr. Miller, I believe Dr. Grillo as program coordinator since last academic year of 2018-2019 was using Blackboard to ensure students were updated and were accessing all necessary information. I believe this was something you were late in accessing in the Spring of 2019 since you might have been using an email other that what the university had assigned for you or had on their records as your primary email address. I am CCing her on this query to be involved in this conversation. Also, the rules regarding academic compliance or more specifically relating to having no more than two course grades below a B and maintaining a GPA of 3.0 and above have not changed since the beginning of the program's founding 20 years ago and is similar in expectation to the Graduate School.

In Truth and Service,
Cristóbal Rodríguez, Ph.D.
Director of Graduate Studies, School of Education, Howard University
Associate Professor of Educational Leadership and Policy Studies
Charles H Thompson Lecture-Colloquium Committee Chair
IDRA 2019 José A. Cárdenas School Finance Fellow
AERA Latina/o/x Research Issues SIG Immediate Past-Chair
2441 4th Street, NW, Room 117; Washington, DC 20059
https://profiles.howard.edu/profile/43816/cristbal-rodrguez<https://nam04.safelinks.protection.outlook.com/?url=https%3A%2F%2Fprofiles.howard.edu%2Fprofile%2F43816%2Fcristbal-rodrguez&data=02%7C01%7C%7Cea5e63990f184c6959e108d79837f8e8%7C02ac0c07b75f46bf9b133630ba94bb69%7C0%7C0%7C637145238475442965&sdata=4BZSUq0lW67hy15GF7PVsxYAyYeGih7idvy4C4uk4rY%3D&reserved=0>
Email: Cristobal.Rodriguez@Howard.edu
Ph: (202)806-7342 Fax: (202)806-5310

EXHIBIT

**15**

to millerbwinston

---------- Forwarded message ----------
From: **Miller, Winston** <winston.miller@bison.howard.edu>
Date: Mon, Jan 13, 2020 at 3:12 PM
Subject: Re: Revised letter for Mr. Winston Miller
To: Rodriguez, Cristobal <cristobal.rodriguez@howard.edu>
Cc: Palmer, Robert <robert.palmer@howard.edu>, Dantley, Scott J <scott.dantley@howard.edu>, Grillo, Lisa M <lisa.grillo@howard.edu>

Thank you for the response Dr. Rodriguez. Yes, I only accessed Blackboard when my professors stated they would be using it as a communication tool for a course.

Do you know when Dr. Grillo notified students of the transition to Blackboard communication? Is it possible to be forwarded the email notification or message to students?

I have looked through my original admission documents which I have maintained for my records and cannot find that information or specific language.

Again, thank you for your response. It is very helpful.

Sincerely,
W. Miller

On Mon, Jan 13, 2020 at 9:50 AM Rodriguez, Cristobal <cristobal.rodriguez@howard.edu> wrote:
    Mr. Miller, I believe Dr. Grillo as program coordinator since last academic year of 2018-2019 was using Blackboard to ensure students were
    updated and were accessing all necessary information. I believe this was something you were late in accessing in the Spring of 2019 since you
    might have been using an email other that what the university had assigned for you or had on their records as your primary email address. I am
    CCing her on this query to be involved in this conversation. Also, the rules regarding academic compliance or more specifically relating to having
    no more than two course grades below a B and maintaining a GPA of 3.0 and above have not changed since the beginning of the program's
    founding 20 years ago and is similar in expectation to the Graduate School.

    In Truth and Service,
    Cristóbal Rodriguez, Ph.D.
    Director of Graduate Studies, School of Education, Howard University
    Associate Professor of Educational Leadership and Policy Studies
    Charles H Thompson Lecture-Colloquium Committee Chair
    IDRA 2019 José A. Cárdenas School Finance Fellow
    AERA Latina/o/x Research Issues SIG Immediate Past-Chair

EXHIBIT

**16**

On Mon, Jan 13, 2020 at 3:55 PM Grillo, Lisa M <lisa.grillo@howard.edu<mailto:lisa.grillo@howard.edu>> wrote:
Dear Mr. Miller,

In response to your question, please note the following timeline:

8/2018: All students in the Ed.D. program were sent a copy of the handbook via email.
11/2018: The Ed.D. handbook was posted to the Ed.D. Program Community Blackboard site.
9/2019: You informed me that you did not have access to the program's Blackboard site and was not aware that the site existed.
9/2019: You were added to the Community site.  Verbally, you confirmed with me that you were receiving emails and updates posted to Blackboard.
10/2019: I held a Program Meeting for all Ed.D. students on 10/15/2019. I sent two notifications to students to announce this meeting.  Fliers were likewise posted through the SOE.  I posted the meeting agenda to Blackboard on 10/14/2019.  In this meeting, I spent considerable time reviewing key program forms and resources posted to Blackboard.  I discussed the importance of reviewing the handbook as a posted resource.  You did not attend the meeting. Attached, please find the meeting agenda.

Thank you, lg

Lisa Maria Grillo, Ed.D.

Assistant Professor and Doctoral Coordinator

The Department of Educational Leadership and Policy Studies

The Howard University School of Education, room 219

2441 4th Street, NW

Washington, DC 20059

lisa.grillo@howard.edu<mailto:lisa.grillo@howard.edu>

https://profiles.howard.edu/profile/47106/lisa-maria%20-grillo<https://nam04.safelinks.protection.outlook.com/?url=https%3A%2F%2Fprofiles.howard.edu%2Fprofile%2F47106%2Flisa-maria%2520-grillo&data=02%7C01%7C%7C36bbacc8594c4918bcf808d79875200e%7C02ac0c07b75f46b0f0b133630ba94bb69%7C0%7C0%7C637145501119482497&sdata=TCoCnSu51UzO0Lwn9d5cZ1BNcouMPVQdtkMT8Hpeq%2Bk%3D&reserved=0>
https://orcid.org/0000-0002-3056-2720<https://nam04.safelinks.protection.outlook.com/?url=https%3A%2F%2Forcid.org%2F0000-0002-3056-2720&data=02%7C01%7C%7C36bbacc8594c4918bcf808d79875200e%7C02ac0c07b75f46b0f0b133630ba94bb69%7C0%7C0%7C637145501119482497&sdata=dzEgb4jV0669sqNGebl077kqowApIujK%2Bf6xDmHosA0%3D&reserved=0>

_____

EXHIBIT
**17**

From: Miller, Winston <winston.miller@bison.howard.edu>
Sent: Monday, January 13, 2020 4:29 PM
To: Grillo, Lisa M <lisa.grillo@Howard.edu>
Cc: Rodriguez, Cristobal <cristobal.rodriguez@Howard.edu>; Palmer, Robert <robert.palmer@Howard.edu>; Dantley, Scott J
<scott.dantley@Howard.edu>
Subject: Re: Revised letter for Mr. Winston Miller

Dr. Grillo,

Thank you for the response.

You stated, 8/2018: All students in the Ed.D. program were sent a copy of the handbook via email.    May I please be forwarded the email from
8/2018 or Blackboard notification? Could you please ensure it includes recipient names with the date and time. More specifically, what date in
August?

Also, you stated, 9/2019: You informed me that you did not have access to the program's Blackboard site and was not aware that the site
existed. I did not nor could I make such a statement. In this current age of technology, an electronic audit could be conducted to clear up any
confusion. I would be more than open to such an investigation.

Lastly, in reference to the student handbook, it states, Dismissal Procedures:


1. Upon receiving notice of a concern, complaint, or charge concerning a student, the program coordinator will meet with the student and may
advise him/her to seek informal methods of resolution with the member(s) raising the concern, complaint, or charge.


Please let me know how to interpret this procedural process. If I am not misreading this language, as the program coordinator, I have yet to be
notified from you to attend such a meeting. I would look forward to such a meeting, Dr. Grillo.


W. Miller


On Mon, Jan 13, 2020 at 3:55 PM Grillo, Lisa M <lisa.grillo@howard.edu<mailto:lisa.grillo@howard.edu>> wrote:

EXHIBIT
**18**

**Miller, Winston <winston.miller@bison.howard.edu>**                    Jan 13, 2020, 6:44 PM

to Robert, Lisa, Cristobal, Scott

Dr. Palmer,

Per the policy, sent by you, under Dismissal Procedures:

1. Upon receiving notice of a concern, complaint, or charge concerning a student, the program coordinator will meet with the student and may advise him/her to seek informal methods of resolution with the member(s) raising the concern, complaint, or charge.

I have yet to be notified by the program coordinator, Dr. Grillo, to attend such a meeting in an attempt to utilize the informal process as recommended.

Are you responding for Dr. Grillo? If so, am I being denied the informal process and only selected parts of the student handbook being applied?

Thank you for your recommendation. I will follow up with Dr. Rodriguez regarding your suggestion. It is very helpful.

Sincerely,
W. Miller



**Miller, Winston <winston.miller@bison.howard.edu>**                    Jan 13, 2020, 6:47 PM

to Lisa, Cristobal, Robert, Scott

EXHIBIT

**19**

accessibility

On Mon, Jan 13, 2020 at 5:08 PM Grillo, Lisa M <lisa.grillo@howard.edu> wrote:

Mr. Miller,

As stated by Dr. Palmer, please refer to the handbook to file an appeal, noting any procedural concerns you have.  Please note the handbook clearly states the academic policy regarding grades.  The handbook was made available to you, and a program meeting was held to review academic and other policies.  Also please note that you have not been charged, nor has a complaint been filed against you.  You are in violatio of the academic policy.  You have been duly notified of this by the departmental chairperson.

If you would like assistance developing a plan of action so that you may complete your degree, I am happy to assist.  Your grades during the la few semesters indicate that additional assistance may benefit you. Please know that our goal and responsibility as faculty are to equip you with the knowledge and skills needed for an individual with an earned doctoral degree.  lg

Lisa Maria Grillo, Ed.D.

Assistant Professor and Doctoral Coordinator

The Department of Educational Leadership and Policy Studies

The Howard University School of Education, room 219

2441 4th Street, NW

Washington, DC 20059

lisa.grillo@howard.edu

https://profiles.howard.edu/profile/47106/lisa-maria%20-grillo<https://nam04.safelinks.protection.outlook.com/?url=https%3A%2F%2Fprofiles.howard.edu%2Fprofile%2F47106%2Flisa-maria%2520-grillo&data=02%7C01%7C%7C36bbacc8594c4918bcf808d79875200e%7C02ac0c07b75f46bf9b133630ba94bb69%7C0%7C0%7C637145501119462511&sdata=Fs21juS85OrvV7JbEEpHWS4qsqz78MUkxADXSGDqQg%3D&reserved=0>
https://orcid.org/0000-0002-3056-2720<https://nam04.safelinks.protection.outlook.com/?url=https%3A%2F%2Forcid.org%2F0000-0002-3056-

EXHIBIT
**20**

## HUSOE Ed.D. EAGLE Program Community: The Ed.D. Student Handbook

Inbox



**Dr. Lisa Grillo -** lisa.grillo@howard.edu <lisa.grillo@howard.edu>          Wed, Aug 5, 2020, 3:37 PM

to

The Ed.D. Student Handbook has been updated for the 2020-2021AY. Please find it here and also under Program Resources.



**Academic Dismissal Appeal**

Inbox



**Miller, Winston** <winston.miller@bison.howard.edu>                    Tue, Sep 8, 2020, 7:24 AM

to Scott

Dean Dantley,

I was notified by Dr. Palmer that I was academically dismissed from Howard University.

Please find attached my formal appeal.

Winston Miller

Dr. S. Dantley, Associate Dean copy - Winston M...

Attachments area



**Dantley, Scott J** <scott.dantley@howard.edu>                    Tue, Sep 8, 2020, 10:31 AM

to me

Good Morning Mr. Miller,

Thanks for the note. I will look into your formal grievance and share with you the process for the appeal.

Best,

Dr. Dantley

*Scott Jackson Dantley, Ph.D.*

Professor and Associate Dean for Academic Affairs

Howard University School of Education

2441 4th Street, NW | Washington, D.C. | 20059

Tel # (202) 806-5334

education.howard.edu

www.Facebook.com/HUschoolofeducation

Twitter: @HU_SOE

---

**From:** "Miller, Winston" <winston.miller@bison.howard.edu>
**Date:** Tuesday, September 8, 2020 at 7:24 AM
**To:** "Dantley, Scott J" <scott.dantley@Howard.edu>
**Subject:** Academic Dismissal Appeal

Dean Dantley,

I was notified by Dr. Palmer that I was academically dismissed from Howard University.

Please find attached my formal appeal.

Winston Miller

image removed by sender. Dr. S. Dantley, Associate Dean copy - Winston M...



**Miller, Winston** <winston.miller@bison.howard.edu>                    Tue, Sep 8, 2020, 11:02 AM

to Scott

Dean Dantley,

Thank you for the response.

I will look forward to hearing from you.

Winston Miller

 ReplyForward

EXHIBIT
**22**



**Palmer, Robert <robert.palmer@howard.edu>**                Tue, Sep 8, 2020, 7:59 AM

to me, Cristobal, Lisa

I can't open this letter. In terms of your appeal, you were required to sit out one semester. After sitting out that one semester, you are eligible to come in fall 2020. Today is the last day for late registration. You should be able to work with your academic advisor to get registered for this semester.

Get Outlook for iOS<https://nam04.safelinks.protection.outlook.com/?url=https%3A%2F%2Faka.ms%2Fo0ukef&data=02%7C01%7C%7C0fc2a8b02668430d30cd06d853eea0bc%7C02ac0c07b75f46bf9b13363b0ba94bb69%7C0%7C0%7C637351631662635838&sdata=1anK4cqA%2Bm4Vkei4WnKeDDD7nXTd1nl0%2F%2FGSe1nyk%3D&reserved=0>

From: Winston Miller (via Google Docs) <drive-shares-noreply@google.com>
Sent: Tuesday, September 8, 2020 7:37:16 AM
To: Palmer, Robert <robert.palmer@Howard.edu>
Cc: Rodriguez, Cristobal <cristobal.rodriguez@Howard.edu>; Grillo, Lisa M <lisa.grillo@Howard.edu>
Subject: Dr. R. Palmer copy - Winston Miller/@00049698; Academic Dismissal Formal Appeal - September 7, 2020 - Invitation to view

External Email Warning
WARNING! Please proceed with caution as this message could be a scam. The sender's account may have been compromised and used to send malicious messages. If this message seems suspicious, please DO NOT CLICK any of the links and/or attachments. If you believe the contents of this email may be unsafe, please send it as an attachment to the ETS Information Security Team: ets-infosec@howard.edu.

winston.miller@bison.howard.edu <mailto:winston.miller@bison.howard.edu> has invited you to view the following document:
[https://ssl.gstatic.com/docs/doclist/images/mediatype/icon_1_document_x64.png]
Dr. R. Palmer copy - Winston Miller/@00049698; Academic Dismissal Formal Appeal - September 7, 2020<https://nam04.safelinks.protection.outlook.com/?url=https%3A%2F%2Fdocs.google.com%2Fdocument%2Fd%2F15DYW9QUpvt4Mfoukja4kbQ83g0To4n7eVAhx0nU3HK0%2Fedit%3Fusp%3Dsharing_eip%26ts%3D5f578cec&data=02%7C01%7C%7Cddc2a8b02868430d30cd08d853eea0bc%7C02ac0c07b75f46bf9b13363b0ba94bb69%7C0%7C0%7C637351631662635836&sdata=hHOKZV7vB79h%2FBCeXAtAPuzGfGEyvZ3qneN4%2F%2FBrnrOc%3D&reserved=0>
[Unknown profile photo]Academic Dismissal Appeal
Open in Docs<https://nam04.safelinks.protection.outlook.com/?url=https%3A%2F%2Fdocs.google.com%2Fdocument%2Fd%2F15DYW9QUpvt4Mfoukja4kbQ83g0To4n7eVAhx0nU3HK0%2Fedit%3Fusp%3Dsharing_eip%26ts%3D5f578cec&data=02%7C01%7C%7Cddc2a8b02868430d30cd08d853eea0bc%7C02ac0c07b75f46bf9b13363b0ba94bb69%7C0%7C0%7C637351631662845629&sdata=jrwMHDSvFZPc6tj7RYYNhiE2DYngx68czSYfPnhOq%3D&reserved=0>
Google Docs: Create and edit documents online.
Google LLC, 1600 Amphitheatre Parkway, Mountain View, CA 94043, USA
You have received this email because winston.miller@bison.howard.edu <mailto:winston.miller@bison.howard.edu> shared a document with you from Google Docs.       [Logo for Google Docs] <https://nam04.safelinks.protection.outlook.com/?url=https%3A%2F%2Fdrive.google.com%2F&data=02%7C01%7C%7Cddc2a8b02868430d30cd08d853eea0bc%7C02ac0c07b75f46bf9b13363b0ba94bb69%7C0%7C0%7C637351631662845629&sdata=QvlptHTGu73dYnauJR2hТI0um9RrgJ66qqos8ZHynWE%3D&reserved=0>
...

[Message clipped]  View entire message
Attachments area



**Miller, Winston <winston.miller@bison.howard.edu>**                Tue, Sep 8, 2020, 11:06 AM

to **Scott**, Robert, Cristobal

Dr. Palmer,

Thank you for the reinstatement.

I will contact Dr. Rodrguez.

I am committed to making the university proud and uphold our historic legacy.

Sincerely,
W. Miller



**Miller, Winston** <winston.miller@bison.howard.edu>                                    Tue, Sep 8, 2020, 11:09 AM

to Scott

Good morning again,

I received official reinstatement from Dr. Palmer.

Please see the email thread below.

Thank you for your assistance.

Sincerely,
W. Miller

Attachments area



**Miller, Winston** <winston.miller@bison.howard.edu>                                    Tue, Sep 8, 2020, 11:10 AM

to **Dawn**

Good morning Dean Williams,

I have received official reinstatement from Dr. Palmer.

Please see the email thread below.

Thank you for your assistance.

Sincerely,
W. Miller

Attachments area



**Miller, Winston** <winston.miller@bison.howard.edu>                                    Tue, Sep 8, 2020, 11:28 AM

to **Lisa**, **Cristobal**

Good morning Dr. Grillo,

I pray all is well with you.

I received official reinstatement from Dr. Palmer. Please see the email thread below.

I would like to meet with you and discuss the comprehensive exam.

Thank you,
W. Miller



**Miller, Winston <winston.miller@bison.howard.edu>**                    Wed, Sep 9, 2020, 6:46 AM

to millerbwinston

---------- Forwarded message ----------
From: **Palmer, Robert** <robert.palmer@howard.edu>
Date: Tue, Sep 8, 2020 at 7:59 AM
Subject: Re: Dr. R. Palmer copy - Winston Miller/@00049698; Academic Dismissal Formal Appeal - September 7, 2020 - Invitation to view
To: Miller, Winston <winston.miller@bison.howard.edu>
Cc: Rodriguez, Cristobal <cristobal.rodriguez@howard.edu>, Grillo, Lisa M <lisa.grillo@howard.edu>

I can't open this letter. In terms of your appeal, you were required to sit out one semester.  After sitting out that one semester, you are eligible to come in fall 2020.  Today is the last day for late registration. You should be able to work with your academic advisor to get registered for this semester.

Get Outlook for iOS<https://nam04.safelinks.protection.outlook.com/?url=https%3A%2F%2Faka.ms%2F60uket&data=02%7C01%7C%7Cddc2a8b02868430d30cd06d853eea0bc%7C02ac0c07b75f46bf9b133630ba94bb69%7C0%7C0%7C637351631662635636&sdata=1arK4cqA%2BIm4Vkei4WaKeDDD7nYTd1nl0%2F%2F7GSe1nyk%3D&reserved=0>

From: Winston Miller (via Google Docs) <drive-shares-noreply@google.com>
Sent: Tuesday, September 8, 2020 7:37:16 AM
To: Palmer, Robert <robert.palmer@howard.edu>
Cc: Rodriguez, Cristobal <cristobal.rodriguez@howard.edu>; Grillo, Lisa M <lisa.grillo@Howard.edu>
Subject: Dr. R. Palmer copy - Winston Miller/@00049698; Academic Dismissal Formal Appeal - September 7, 2020 - Invitation to view

External Email Warning
WARNING! Please proceed with caution as this message could be a scam. The sender's account may have been compromised and used to send malicious messages. If this message seems suspicious, please DO NOT CLICK any of the links and/or attachments. If you believe the contents of this email may be unsafe, please send it as an attachment to the ETS Information Security Team: ets-infosec@howard.edu.

winston.miller@bison.howard.edu<mailto:winston.miller@bison.howard.edu> has invited you to view the following document:
[https://ssl.gstatic.com/docs/doclist/images/mediatype/icon_1_document_x64.png]
Dr. R. Palmer copy - Winston Miller/@00049698; Academic Dismissal Formal Appeal - September 7, 2020<https://nam04.safelinks.protection.outlook.com/?url=https%3A%2F%2Fdocs.google.com%2Fdocument%2Fd%2F15DYW9QiJpvt4Mfoukja4kbQ63g0To4n7eVAhx0nU3HKO%2Fedit%3Fusp%3Dsharing_eip%26ts%3D5f578ceo&data=02%7C01%7C%7Cddc2a8b02868430d30cd08d853eea0bc%7C02ac0c07b75f46bf9b133630ba94bb69%7C0%7C0%7C637351631662635636&sdata=hHOK2V7vB79h%2FBCeXAtAPuzSfGEyvZ3qneN4%2F%2FbmrOc%3D&reserved=0>
[Unknown profile photo]Academic Dismissal Appeal
Open in Docs<https://nam04.safelinks.protection.outlook.com/?url=https%3A%2F%2Fdocs.google.com%2Fdocument%2Fd%2F15DYW9QiJpvt4Mfoukja4kbQ63g0To4n7eVAhx0nU3HKO%2Fedit%3Fusp%3Dsharing_eip%26ts%3D5f578ceo&data=02%7C01%7C%7Cddc2a8b02868430d30cd08d853eea0bc%7C02ac0c07b75f46bf9b133630ba94bb69%7C0%7C0%7C637351631662645829&sdata=jrwMKDSvFZRc8j7KtYNhllE2DYngx68czSYfFnKcAg%3D&reserved=0>
Google Docs: Create and edit documents online.
Google LLC, 1600 Amphitheatre Parkway, Mountain View, CA 94043, USA
You have received this email because winston.miller@bison.howard.edu<mailto:winston.miller@bison.howard.edu> shared a document with you from Google Docs.    [Logo for Google Docs]<https://nam04.safelinks.protection.outlook.com/?url=https%3A%2F%2Fdrive.google.com%2F&data=02%7C01%7C%7Cddc2a8b02868430d30cd08d853eea0bc%7C02ac0c07b75f46bf9b133630ba94bb69%7C0%7C0%7C637351631662645829&sdata=CvIpHTGu73dYnsUR2hTt0umdRqgJ65qqou6ZHysWE%3D&reserved=0>
Attachments area



**Miller, Winston <winston.miller@bison.howard.edu>**                    Wed, Sep 9, 2020, 6:47 AM

to millerbwinston

---------- Forwarded message ----------
From: **Miller, Winston** <winston.miller@bison.howard.edu>
Date: Tue, Sep 8, 2020 at 11:06 AM
Subject: Re: Dr. R. Palmer copy - Winston Miller/@00049698; Academic Dismissal Formal Appeal - September 7, 2020 - Invitation to view
To: Palmer, Robert <robert.palmer@howard.edu>, Rodriguez, Cristobal <cristobal.rodriguez@howard.edu>
Cc: Dantley, Scott J <scott.dantley@howard.edu>

Dr. Palmer,

Thank you for the reinstatement.

I will contact Dr. Rodrguez.

I am committed to making the university proud and uphold our historic legacy.

Sincerely,
W. Miller

On Tue, Sep 8, 2020 at 7:59 AM Palmer, Robert <robert.palmer@howard.edu> wrote:
I can't open this letter. In terms of your appeal, you were required to sit out one semester.  After sitting out that one semester, you are eligible to come in fall 2020.  Today is the last day for late registration. You should be able to work with your academic advisor to get registered for this semester.

Get Outlook for iOS<https://nam04.safelinks.protection.outlook.com/?url=https%3A%2F%2Faka.ms%2Fo0ukef&data=02%7C01%7C%7Cddc2a8b028884330d36cd08d853ee a0bc%7C02ac0c07b75f46bf9b133830ba94bb69%7C0%7C0%7C637351631662835363 8&sdata=1snK4oqA%2Bim4Vkei4WnKeDDD7nXTd1ri0%2F%2F7G5e1nyk%3D&reserved=0>

From: Winston Miller (via Google Docs) <drive-shares-noreply@google.com>
Sent: Tuesday, September 8, 2020 7:37:16 AM
To: Palmer, Robert <robert.palmer@Howard.edu>
Cc: Rodriguez, Cristobal <cristobal.rodriguez@Howard.edu>; Grillo, Lisa M <lisa.grillo@Howard.edu>
Subject: Dr. R. Palmer copy - Winston Miller/@00049698; Academic Dismissal Formal Appeal - September 7, 2020 - invitation to view

External Email Warning
WARNING! Please proceed with caution as this message could be a scam. The sender's account may have been compromised and used to send malicious messages. If this message seems suspicious, please DO NOT CLICK any of the links and/or attachments. If you believe the contents of this email may be unsafe, please send it as an attachment to the ETS Information Security Team: ets-infosec@howard.edu.

winston.miller@bison.howard.edu<mailto:winston.miller@bison.howard.edu> has invited you to view the following document:
[https://ssl.gstatic.com/docs/doclist/images/mediatype/icon_1_document_x64.png]
Dr. R. Palmer copy - Winston Miller/@00049698; Academic Dismissal Formal Appeal - September 7, 2020<https://nam04.safelinks protection.outlook.com/?url=https%3A%2F%2Fdocs.google.com%2Fdocument%2Fd%2F15DYW9OiJpvfrMfoukja4kbO63g0T o4n7eVAhx0riU3HK0%2Fedit%3Fusp%3Dsharing_eil%26ts%3D5f576cec&data=02%7C01%7C%7Cddc2a8b028884330d36cd08d853eeaa0bc% 7C02ac0c07b75f46bf9b133830ba94bb69%7C0%7C0%7C6373516316628353638&sdata=liHOKzV7vB79h% 2FBCeXAtAPuzSf3Eyv23qneN4%2F%2FbmOc%3D&reserved=0>

[Unknown profile photo]Academic Dismissal Appeal

Open in Docs<https://nam04.safelinks.protection.outlook.com/?url=https%3A%2F%2Fdocs.google.com%2Fdocument%2Fd% 2F15DYW9OiJpvfrMfoukja4kbO63g0To4n7eVAhx0riU3HK0%2Fedit%3Fusp%3Dsharing_eip%26ts%3D5f576cec&data=02%7C01%7C% 7Cddc2a8b028884330d36cd08d853eea0bc%7C02ac0c07b75f46bf9b133830ba94bb69%7C0%7C0%7C6373516316628456298&sdata= jrwMkDGvFZRcibj7KtYNiHiiE2DYng48ocz5YtFnKcAg%3D&reserved=0>

Google Docs: Create and edit documents online.
Google LLC, 1600 Amphitheatre Parkway, Mountain View, CA 94043, USA
You have received this email because winston.miller@bison.howard.edu<mailto:winston.miller@bison.howard.edu> shared a document with you from Google Docs.    [Logo for Google Docs] <https://nam04.safelinks.protection.outlook.com/?url=http%3A%2F%2Fdrive.google.com% 2F&data=02%7C01%7C%7Cddc2a8b028884330d36cd08d853eea0bc%7C02ac0c07b75f46bf9b133830ba94bb69%7C0%7C0% 7C6373516316628456298&sdata=QvlprHTGu73dYnaUR2hTf0urndRqgJ85oqcu8ZHymWE%3D&reserved=0>

 ReplyForward

EXHIBIT
**23**



Tuesday, September 8, 2020

Good morning.
I've called, email, both, then from Dr. Palmer, containing has into the program. Are you available after 2:45pm today to talk? He said I could register for classes but today is the last day.

11:14 AM

Reach out ASAP to MS Endale via email so you can resubmit your application to be reinstated. Yes let's check in at that point

12:08 PM

EXHIBIT
**24**



EXHIBIT

**25**

to Robert, Scott

Dr. Palmer,

After receiving your email this morning, Dr. Rodriguez provided me with the pin. I was able to successfully register for fall 2020 classes.

Thank you,
W. Miller

On Tue, Sep 8, 2020 at 12:10 PM Palmer, Robert <robert.palmer@howard.edu> wrote:

Hi, Mr. Miller,

I just wanted to make certain that you completed the Former Returning Student Application. You must complete this application after sitting out one semester, as you were requested to do per your academic suspension. I have checked with Ms. Brandy Jackson or Mrs. Endale and they can't locate your application. When did you submit your application? Please advise. Thank you!

Robert T. Palmer, Ph.D.
Chair and Associate Professor
Department of Educational Leadership and Policy Studies
(202) 806-7347

Pronouns: He/Him/His

Co-Editor, *Journal of African American Males in Education*

Senior Scholar, ACPA- College Student Educator International

My Research: http://works.bepress.com/robert_palmer/

EXHIBIT
**25**

## Your Current Standing in the Ed.D. program in ELPS

Inbox



**Palmer, Robert** <robert.palmer@howard.edu>                    Tue, Sep 8, 2020, 6:29 PM

to me, Scott, Cristobal, Lisa

Dear Mr. Winston Miller:

When I responded to your earlier email, I was under the impression that you had sat out for the spring semester and completed the Former Returning Student Application per the letter sent on January 12th, 2020. However, after consulting with your academic advisor, Dr. Rodriguez, and Associate Dean for Academic Affairs, Dr. Dantley, you are still dismissed from the Education Doctorate (Ed.D.) program in the Department of Educational Leadership and Policy Studies as you have not submitted a Former Returning Student Application and you remained enrolled in a course this past Spring of 2020. As noted per the letter sent out on January 12th, 2020, you can reapply to the program. Please note, however, that your reapplication must be approved by the faculty. In addition to submitting your reapplication, you must also include a statement with considerations to the faculty regarding your academic history and how to eventually move forward successfully in the Ed.D. program.

EXHIBIT
27

## Section 6. Academic and Research Advisement

### Academic Advisor

Each department shall provide graduate faculty advisement for students in the Graduate School. All graduate students must be assigned an advisor by the end of their first semester in residence. Departments will assign each incoming graduate student an academic advisor who will assist in academic planning throughout matriculation and development of a Program of Study. The student shall also be given a copy of the departmental handbook and/or rules and regulations as applicable.

A detailed roster that reports an up-to-date status of all graduate students and their academic advisors must be sent to the Graduate School by the end of each academic year.

### Research Advisor

Graduate students and/or the department must seek a research advisor who will assist students in research activities related to the thesis and dissertation processes. A detailed roster that reports an up-to-date status of all graduate students and their research advisor must be sent to the Graduate School at the end of each academic semester.

Prior to advancement to candidacy, each department shall ensure that a graduate faculty research adviser has been assigned to students in the Graduate School. The process of how this is done, unless otherwise notified by the Graduate Dean, is graduate program specific.

## Section 7. Readmission to the Graduate School

Any student dismissed for reasons other than the second failure of the comprehensive examination or the oral defense of the thesis/the dissertation may seek readmission to the Graduate School. First, the student must complete an application to the Office of Admission and include a complete record of prior academic performance at Howard University. Second, the student must submit a written request for readmission to the Graduate Dean of the Graduate School. Third, the student must receive approval for readmission from the Graduate Dean of the Graduate School and from the department in which the student wishes to enroll. Reinstatement requires fulfillment of conditions formulated by the department in which the student is a degree candidate and approved by the Graduate Dean. Following approval, the Graduate Dean will notify the student of these conditions.

**A period of at least one semester must elapse between the students' dismissal and his/her re-admittance. It is important to note that re-admittance is not guaranteed. A student who fails the comprehensive examination or the final oral examination in defense of the thesis or dissertation a second time will be dropped from the Graduate School and is ineligible for readmission. (see: Article VII: Appeal of Academic Decisions).**

Returning students who were absent from, or not registered at, the University for one entire semester (summer session not included) are required to apply for readmission as a former student

EXHIBIT
**28**

Section 3. Grades and Academic Status

A cumulative grade point average of 3.00 (B) is required for graduation.

A student will be permitted only two "C" grades. After the student receives a third "C" grade in a Ph.D. program at Howard, he/she will be dismissed from the Graduate Program. In most instances, the dismissal letter will be sent prior to the start of the following semester.  If it is not, the dismissal is still in effect.  Accordingly, students should correspond with their Director of Graduate Studies, Chair, and Academic Dean immediately upon earning the 3rd C grade. "C" grades earned at the master's level at Howard University or elsewhere are not to be included in this count and cannot be counted toward degree requirements.

A student who falls below 3.00 GPA will  be  given due notice by the Graduate School that he/she must raise his/her quality point index to 3.00 in the next two terms in residence. Students failing to do so will be dismissed from the Graduate School. In most instances, the dismissal letter will be sent prior to the start of the following semester.  If it is not, the dismissal is still in effect. Accordingly, students should correspond with their Director of Graduate Studies, Chair, and Academic Dean immediately upon earning the 3rd C grade.

A student who demonstrates an inability to perform satisfactorily at the graduate level may be recommended for dismissal.


Section 4. Program of Study

Each department in which the student is enrolled shall specify the programs and the requirements for each matriculating degree student. An approved Program of Study for each student must be filed with the Graduate School no later than the end of the first semester in residence. The responsibility of submitting the individualized Program of Study is that of the student. Failure to do so in a timely manner may result in suspension of enrollment privileges at the University.


Section 5. Earned Credit Transferal to the Ph.D. Degree

Students holding a bachelor's degree who were admitted directly into the Ph.D. program may— with the approval of the Committee on Graduate Studies—transfer a maximum of 18 semester credit hours of graduate credits with a grade of B or better into  the  Ph.D. program.

Students holding a Master's degree from a recognized accredited institution (this includes Howard University) or an equivalent international institution may transfer  no  more than 24 graduate course credits with a grade of B or better into the Ph.D. program, dependent upon approval of the Committee on Graduate Studies in the major department.  Official transcripts must accompany any request for transfer of credits.

EXHIBIT
**29**

## ACADEMIC POLICIES
**Student Academic Grievance Procedures**

### The Informal Process

1. A student who believes that they have been aggrieved must first attempt to seek an informal resolution with the other party involved in the dispute, e.g. grade dispute with instructor.
2. If the student is unable to resolve the dispute with the primary party of the dispute then, the student is advised to seek the intervention of their department chairperson.
3. All disputes which are not resolved at the departmental level are then brought to the Dean's Office, where upon the Dean or their designee will seek to reach an informal resolution through mediation between the parties.
4. If the mediation at the Dean's level fails, then the student's grievance is consigned to the committee designated by the school/college to address student grievances herein referred to as the Student Grievance Committee.

### The Formal Process

1. Student grievances which are consigned to the Student Grievance Committee must be specified in writing and given to the Dean or their designee.
2. A student written statement, along with supportive evidence, constitutes a case document which will be submitted to each member of the committee.
3. The second party to dispute is also requested to provide the Office of the Dean with their account of the matter in dispute, which becomes part of the case document that is forwarded to the committee.
4. The Student Grievance Committee is then required to set a date for convening a meeting to hear the case(s) as expeditiously as possible.
5. After the date has been set, each party to the dispute is sent a certified letter which informs them of the charges, date of the meeting, as well as a statement requesting their presence.
6. During the hearing, the student presents their case; after the accused party is allowed to present the other side, each side is permitted to have witnesses to testify on their behalf.
7. Following the hearing, members of the committee after deliberation on their assessment of the case should be resolved.
8. The committee's decision is sent to the Dean of the School/College in the form of a recommendation.
9. The Dean then informs the student in writing of the decision, which may be based upon the committee's recommendation or upon a modification of it.

*Approved by the Board of Trustees on April 23, 1994*

## READMISSION AFTER ACADEMIC SUSPENSION

A student, after being suspended, is not eligible to apply for readmission for at least one semester. A request for readmission shall be initiated by a written application to the Dean. A faculty committee shall review the case and render a decision based on the academic achievement level during the period of enrollment and other relevant factors. Such decisions made 30 days prior to the registration period shall be valid for the next registration period.

**Readmission Procedures**

In the event that your attendance is interrupted, please follow the procedures listed below:
A. Students upon graduation, cannot return to the same school or status (as an FSR), but must be considered either graduate/professional, unclassified, or seeking another undergraduate degree and must pay the $25.00 application fee.
B. Regulations relating to returning students require that all students who are absent from or not registered at the university for one entire semester (Summer School not Included) must apply in advance for readmission.

13

EXHIBIT
**30**

### A1.4 Board of Trustees

The ultimate authority and responsibility for both the development of policies and the control and operation of Howard University is vested in a self-perpetuating Board of Trustees as provided in the University's charter.  The Board of Trustees is governed by its bylaws.

### A1.5 Academic Administrative Officers

Academic administrative officers of the University include the President, the Provost and Chief Academic Officer, deans, associate deans, department chairs, and directors of academic units. Other members of the President's cabinet and other persons with advisory or administrative responsibilities whom the President may appoint also help to achieve the University's mission.

### A1.5.1 President

The President is the chief executive of the University and is responsible for implementing the policies established by the Board of Trustees and for making appropriate recommendations to the Board as provided by its bylaws and by this handbook.  Such recommendations include those affecting academic policies and programs that originate in the schools and colleges.

The President is the official representative and spokesperson for the university.

### A1.5.2 Provost and Chief Academic Officer

The Provost and Chief Academic Officer (the "Provost") is responsible for the overall supervision of the programs and activities of the schools and colleges, other academic units, and the academic support units of the University.  The Provost is largely responsible for the appointment and retention of the faculty members who sustain these programs.

### A1.5.3 Deans of Schools and Colleges

Each of the University's deans is responsible for the administration of the school/college he or she leads. Deans report to the President, through the Provost.  Associate and assistant deans report to the dean of their school.  Deans have responsibilities that may include, but are not limited to, the following: faculty recruitment and development; faculty evaluation; academic program development and review; student advising; budget development and management; course schedule planning; general supervision of school/college research, teaching, and fundraising; and service and outreach activities, in addition to other duties that may be assigned or required. Deans shall consult with the faculty in matters relevant to the academic programs and administration of the unit and be guided by the principle of shared governance. The administrative functions, titles, and status of deans (including associate and assistant deans) of schools and colleges, shall be distinct from their functions, titles, and status, if any, as holders of academic positions. Deans will normally hold tenure within their academic departments and will retain their departmental seniority and rights to return to a tenured position in their department when they leave the administrative position. While serving in administrative positions, deans (including associate and assistant deans), are ex officio members of the faculty senate.

Deans without faculty status have no retreat rights. A dean who has not been awarded tenure does not have the right to assume a faculty position unless the individual's credentials have been reviewed by the appropriate departmental and college committees and a recommendation for a faculty appointment has been made by both committees and approved by the president and Board of Trustees.

### A1.5.4 Department Chairs

Each department chair is responsible for the administration of the academic unit to which he or she is assigned. The department chair's responsibilities may include, but are not limited to, the following: faculty recruitment, development, and evaluation; program development, review, evaluation and assessment; student advising; departmental budget development and implementation; course schedule planning; and general coordination of the departmental research, teaching, and outreach activities. Department chairs shall consult with the faculty in matters relevant to the academic programs and administration of the unit and be guided by the principle of shared governance. The administrative functions, titles, and status of department chairs shall be distinct from their functions, titles, and status, if any, as holders of academic positions. Department chairs will normally hold tenure within their departments and will retain their departmental seniority and rights to return to a tenured position in their department when they leave their administrative position.

In schools that are not organized into departments, the associate dean for academic affairs or other appropriate academic administrator may fulfill responsibilities associated with chairs of departments.

Department chairs without faculty status have no retreat rights. A chair who has not been awarded tenure does not have the right to assume a faculty position unless the individual's credentials have been reviewed by the appropriate departmental and college committees and a recommendation for a faculty appointment has been made by both committees and approved by the president and Board of Trustees.

### A1.5.5 Directors of Academic Units

Directors are responsible for the administration of units that are not schools or colleges, and they may also fulfill responsibilities associated with chairs of departments.  Directors shall consult with the faculty in matters relevant to the academic programs and administration of the unit and be guided by the principle of shared governance.

## Section A2: Academic Organization and Governance

### A2.1 Shared Governance

Shared governance is defined as the right and responsibility of faculty to seek early and meaningful engagement with the administration and the Board of Trustees in the development of policies and decisions that impact university-wide programs and the responsiveness of Howard

EXHIBIT

**31**

18

8. Following the hearing, members of the committee deliberate and develop a recommendation as to how the case should be resolved.

9. The committee's recommendation is sent to the Dean of the School/College.

10. The Dean considers the committee's recommendation, makes a formal decision, which may be based upon or may modify the recommendation, and then informs both parties in writing of the decision.

## Dismissal Procedures

1. Upon receiving notice of a concern, complaint, or charge concerning a student, the program coordinator will meet with the student and may advise him/her to seek informal methods of resolution with the member(s) raising the concern, complaint, or charge. The student and Program Director will meet no later than 30 days to discuss the outcome of this action.

2. If a resolution is not possible, cannot be reached, or if is inappropriate or unsatisfactory, the program coordinator will inform the Program faculty that the student's status in the Program may be in immediate jeopardy, and a formal meeting of the Program faculty will be held to review the nature of the concern, complaint, or charge. During the meeting, the faculty will review the nature of the threat to the student's status and arrive at a decision regarding remediation or probation. If the concern, complaint, or charge is judged to be sufficiently severe, the faculty may elect to recommend dismissal from the Program.

3. If the concern, complaint or charge is judged to be remediable, the faculty will develop a plan with the student to remediate his/her performance deficiencies and/or conduct problems. The remediation plan will describe the nature of the concern, complaint, charge, or deficiency, outline and specify expected behavior patterns or goals of the plan, describe the methods for accomplishing the specified goals, and identify a date for re-evaluation of the student.

4. During the time period of the remediation, the student will be considered on probation and may not enroll in classes that are connected with the concern, complaint, charge, or deficiency, until the student is re-evaluated.

5. On the basis of the evaluation, the faculty may: a) decide that the student has satisfactorily met the remedial goals and the student will continue in the program; b) decide that the student requires further remedial goals, should be re-evaluated at a later date, and should continue the student on probation; c) decide that the student has unsatisfactorily met the remedial goals and there is no expectation that he/she will be able to meet them, and recommend that the student be dismissed from the program.

6. Following completion of the program faculty's decision, the program coordinator will inform the student (in writing) of the faculty's decision and, if appropriate, clearly specify what, if any, conditions must be satisfied by the student to maintain his or her standing within the program.

The student will also be advised that if he or she wishes to grieve the outcome of the faculty's decision, the grievance procedures specified in Graduate Student Rights and Responsibilities should be followed.

## FINANCIAL ASSISTANCE INFORMATION

Upon admission to the Program, students are eligible to receive financial support from the School of Education, the Graduate School, or the University. Although assistantships and scholarships are limited, both the School of Education and Graduate School work hard to provide as many graduate assistantships and scholarships as possible. Still, not all students can be financially supported. Graduate assistantships are typically awarded on a yearly basis without guarantees for continued funding. Inquiries about graduate assistantships or financial aid should be directed to the Associate Dean's Office of the School of Education, the Graduate School, ELPS Program Coordinator, Director of Graduate Studies, and the Howard University Financial Aid Office. Funding sources and information can be found on the School of Education's website (http://howard.edu/schooleduation).

Scholarship awards can also be found through professional organizations and federal agencies such as the Thurgood Marshall and the U.S. Department of Education. Online websites such as www.fastweb.com and www.finaid.com list comprehensive financial aid information and opportunities. In addition, a number of research centers, grants, and academic programs on campus hire ELPS doctoral students. In addition, individual faculty members may also have grants and contracts that provide financial assistance opportunities for students.

## INVOLVEMENT IN PROGRAM, PROFESSIONAL AND OTHER EDUCATIONAL ACTIVITIES

There are several student associations on campus as well as professional associations off campus that welcome student involvement. Some of the on-campus associations include: the Howard University National Education Association; Kappa Delta Pi (Theta Alpha Chapter); Phi Delta Kappa (Howard University Chapter); the Graduate Student Council; and the School of Education Student Council. Numerous off-campus professional associations in the area are open to student involvement and membership (e.g., the National Alliance of Black School Educators (NABSE), American Association of School Administrators (AASA), and the National School Board Association (NSBA). In addition, each year the School of Education sponsors on-campus lectures and various workshops.